129 P.3d 88

**Maureen KARR, Plaintiff–Appellant–Cross Respondent,**

v.

**Gary BERMEOSOLO, Jeff Piper, Celina Sturgis, John Does 1–10, individually and the State of Idaho, Defendants–Respondents–Cross Appellants.**

No. 30507.

Supreme Court of Idaho,
Boise, September 2005 Term.

Oct. 14, 2005.

Lynn, Scott, Hackney & Jackson, Boise, for appellant. John C. Lynn argued.

Perry Law, P.C. and Wilson & McColl, Boise, for respondents. Maurice O. Ellsworth and Lisa Bertoch Rasmussen argued.

BURDICK, Justice.

## I. INTRODUCTION

This is a wrongful termination of a public employee case. The employee contends she was terminated from her employment as a result of writing a letter addressed to and finally received by Governor Kempthorne's office. She further contends the letter was protected speech under the First Amendment to the United States Constitution. The employee appeals from the district court's dismissal of the action upon the State of Idaho's and Gary Bermeosolo, Jeff Piper and Celina Sturgis' combined motions for summary judgment. We affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Appellant, Maureen Karr (Karr), was hired by the Idaho Division of Veterans Services as a Registered Nurse Manager at the Idaho State Veterans Home in Boise (ISVH–B) in November 2000. Respondent Gary Bermeosolo was the Division Administrator of the Division of Veterans Services during the time Karr worked at ISVH–B. Respondent Jeff Piper was the temporary Acting Administrator of ISVH–B who supervised Karr twice during her tenure. Respondent Celina Sturgis was a nurse manager.

At the time Karr was hired, Jeanne Miller was the director of nursing services (DNS) and Karr's direct supervisor. Miller opposed hiring Karr, and the two never had a cordial working relationship. Finally, Karr filed a grievance against Miller; Miller was terminated in January 2001, soon after Karr's grievance was filed. Shortly after Miller left ISVH–B she placed an undefined "counseling letter" in Karr's box and reported Karr to the state board of nursing for various concerns.

On May 25, 2001, another nurse was suspended from ISVH–B with pay pending an investigation into allegations that he failed to follow nursing procedures and abide by the respectful workplace policies. However, as a result of this investigation he was issued a formal written warning and removed from suspension. He returned to work at ISVH–B in early June 2001.

Around the same time that this nurse was returning to work, Miller also returned to ISVH–B as DNS. Prior to Miller's return, Karr learned that both would be returning. Karr met with Sturgis, another nurse manager and a former nurse manager. They discussed their concerns about the impending return of Miller and the other nurse. They also discussed contacting the Governor with their concerns.

On June 8, 2001 Karr wrote a letter to the Governor stating:

Dear Govenor [sic] Kempthorne,

There are multiple issues/concerns existing at the Idaho State Veterans Home in Boise. These issues are very serious. And if things continue down the same path we fear the facility and its' [sic] residents will suffer the consequences. These consequences could be severe and could draw the media's attention again.

The staff at ISVH–B would greatly appreciate a meeting with you and/or your attention to these issues. These issues that are of great concern seem to be caused by the current Divisional Administrator. He continually makes decisions on the clinical side of this home that override and bind the hands and decisions of the DNS. These decisions include, but are not limited to bringing back an RN who has committed Fraud and Forgery and makes sexually inappropriate comments to fellow staff and who has been seen to be verbally abusive to residents. Also bringing back a DNS who sought on a regular basis to undermine the facility and staff. She created an environment of hate and discomfort. An atmosphere not supportive of good care of our residents. The current acting DNS has worked hard to hire good,

caring, capable staff. The mood and atmosphere of the facility has been quiet and amiable since she was named acting DNS. Staff are [sic] providing good care and the facility looks good.

If the Divisional Administrator is allowed to continue to interfere in the day to day clinical decisions of this facility it will be devastating. If he continues to allow employees to not only continue to work here but be rewarded for doing poor, unprofessional and harmful work the residents of this facility will suffer greatly. We will loose [sic] good, caring staff who have worked hard to turn this facility around.

We have very serious concerns and we implore your help. Please let us meet with you to share our concerns.

Thanks,

Maureen Karr

I would like to remain annonomous [sic] as I fear for my job.

Karr gave this handwritten letter to Sturgis to fax, from her home, to the Governor. However, Sturgis never faxed the letter. Instead, she showed it to Susan Lowman-Thomas of the Human Resources Division. While there is no indication in the record as to how the letter made its way to the governor's office, it was received there. Around the same time, Lowman-Thomas and a member of the governor's staff both forwarded the letter to Gary Bermeosolo.

On June 25, 2001, Karr was suspended pending an investigation. Based on the investigator's report that Karr had sent a letter to the Governor, had solicited other people to send letters and had been counseled in the past about inappropriate conduct, Bermeosolo and Piper decided to issue Karr a written reprimand. On August 16, 2001, Piper sent Karr a written reprimand letter, outlining the finding of the investigation, instructing her to comply with the division's policies and procedures, and directing her to return to work on August 20, 2001.

Upon Karr's return to IVHS–B, Sturgis was the acting DNS and supervised Karr. Shortly after her return, Karr filed a grievance contesting the factual basis for her rep-

rimand and requesting "formal problem solving" with Piper. Within the first two days back Karr filed another request for "formal problem solving" with Sturgis regarding Sturgis "accusing [Karr] of causing disruption and failing to attend Incidents and Accidents Meetings."

In early September, two more incidents occurred between Karr and Sturgis. The exact facts surrounding these two incidents are disputed. However, as a result of further investigation, Karr was placed on administrative leave and subsequently terminated formally on September 21, 2001.

On December 21, 2001 Karr filed a complaint in district court, alleging violation of her constitutional rights to due process and free speech, violation of her rights under the Idaho Protection of Public Employees Act, and tort claims under state law. The Respondents then moved for summary judgment, arguing that the June letter was not protected by the First Amendment and that Sturgis was entitled to qualified immunity, which the district court granted on the basis that the June letter was not protected speech under the First Amendment and that there was no evidence linking the letter to Karr's termination. The district court then declined to reconsider this ruling, and Karr filed her timely notice of appeal from this decision. Respondents also timely filed cross-appeals of the denial of their motion to dismiss and motion in limine and the granting of Karr's motion to amend to add a claim for punitive damages.

### III. STANDARD OF REVIEW

 In an appeal from a grant of summary judgment, this Court's standard of review is the same as the district court's standard in ruling on the motion. *Thomson v. Lewiston*, 137 Idaho 473, 475–76, 50 P.3d 488, 490–91 (2002). This Court reviews the record before the district court, including pleadings, depositions, admissions and affidavits, if any, to determine de novo whether, after construing the facts in the light most favorable to the nonmoving party, there exists any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. *Tusch Enters. v. Coffin*, 113

Idaho 37, 40, 740 P.2d 1022, 1026 (1987); *see also* I.R.C.P. 56(c). If the evidence shows no disputed issue of material fact, what remains is a question of law over which the appellate court exercises free review. *Friel v. Boise City Hous. Auth.*, 126 Idaho 484, 485, 887 P.2d 29, 30 (1994).

## IV. DISCUSSION

■■■ Karr argues that she was terminated in retaliation for sending the June letter, which she maintains is protected speech under the First Amendment. The Court must engage in a four-part test for determining whether speech is constitutionally protected and precludes discipline of an employee.

First, the court must determine whether the speech may be fairly characterized as constituting speech on a matter of public concern. If the speech involves a matter of public concern, then the court must balance the employee's interest in commenting upon matters of public concern against the interest of the state, as an employer, in promoting the efficiency of the public services it performs. Third, if the balance favors the employee, then the employee must show that the protected speech was a substantial or motivating factor in the detrimental employment decision. Finally, if the employee meets this burden, then the employer is required to show by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected speech.

*Fridenstine v. Idaho Dept. of Admin.*, 133 Idaho 188, 194, 983 P.2d 842, 848 (1999) (quoting *Lockhart v. State, Dept. of Fish & Game*, 127 Idaho 546, 552, 903 P.2d 135, 141 (Ct.App.1995)). "[T]he inquiry into the protective status of the speech is one of law, not fact." *Lubcke v. Boise City/Ada County Hous. Auth.*, 124 Idaho 450, 466, 860 P.2d 653, 668 (1993) (quoting *Connick v. Myers*, 461 U.S. 138, 148 n. 7, 103 S.Ct. 1684, 1691, 75 L.Ed.2d 708, 720 (1983)); *see also Farnworth v. Femling*, 125 Idaho 283, 286, 869 P.2d 1378, 1382 (1994). The Court makes an independent judgment of whether the statement is of public concern taking into consideration the manner, time and place in which it was made. *Lockhart*, 127 Idaho at 552, 903 P.2d at 141 (citing *Connick*, 461 U.S. at 152, 103 S.Ct. at 1692–93, 75 L.Ed.2d at 723).

■■■ "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48, 103 S.Ct. at 1690–91, 75 L.Ed.2d at 720–21. This determination turns on the nature of the employee's speech—whether it concerns matters involving political, social or other concerns to the community. *Gardner v. Evans*, 110 Idaho 925, 933, 719 P.2d 1185, 1193 (1986) (citing *Connick*, 461 U.S. at 146, 103 S.Ct. at 1689–90, 75 L.Ed.2d at 719–20). A public employee still enjoys First Amendment protection even if his or her views are expressed privately. *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 415–16, 99 S.Ct. 693, 696, 58 L.Ed.2d 619, 624–25 (1979). However, speech focused on internal policy and personnel grievances does not implicate the First Amendment. *Hyland v. Wonder*, 972 F.2d 1129, 1137 (9th Cir.1992).

In *Gardner*, this Court found that an employee's speech at a board meeting opposing a motion to terminate another employee that praised that other employee and her accomplishments addressed an office dispute about a personnel decision, rather than a matter of public concern. 110 Idaho at 934–35, 719 P.2d at 1194–95. In *Totman*, the Court of Appeals determined that an employee commenting on her non-renewal was only speaking out on a matter of personal interest. *Totman v. E. Idaho Tech. Coll.*, 129 Idaho 714, 719, 931 P.2d 1232, 1237 (Ct.App.1997). In *Connick*, the United States Supreme Court determined that the employee's questionnaire distributed to her coworkers was not, with a single exception, a matter of public concern,[1] but instead an extension of her private concerns "pertaining to the confidence and trust that [her] coworkers posses[ed] in various supervisors, the level of

---

1. The Court did, however, find one question touched upon a matter of public concern. 461 U.S. at 149, 103 S.Ct. at 1691, 75 L.Ed.2d at 721–22. That single question dealt with pressure to "work on political campaigns on behalf of office supported candidates." *Id.*

office morale, and the need for a grievance committee" and her dispute over a transfer to another unit. 461 U.S. at 148, 103 S.Ct. at 1690–91, 75 L.Ed.2d at 720–21.

Here, the content of the June letter shows that Karr's grievance is with the administrators' personnel decisions. Although, Karr refers to interference with clinical decisions in her June letter, the only examples she gives are actually personnel decisions. Looking to the factual context surrounding the letter shows this to be the case. There is no evidence in the record regarding interference with clinical decisions, either by these two nurses or by the administrators at IVHS–B. Karr complained to the administration about both Miller and the other nurse, and their imminent return coincides with Karr's letter. Yet, her letter does not indicate the administrative process used to return these two employees was somehow subverted or undermined. Rather, the content, context, timing and subject matter of the June letter all indicate that Karr was complaining about personnel decisions. While she is clearly upset about the return of the two nurses, such personal feelings did not involve First Amendment considerations.

Since Karr's June letter did not address a matter of public concern, the Court need not address the other issues on appeal.

### V. ATTORNEY FEES

Both Appellant and Respondents have requested attorney's fees under Idaho Code § 12–117. This section provides:

> Unless otherwise provided by statute, in any administrative or civil judicial proceeding involving as adverse parties a state agency, a city, a county or other taxing district and a person, the court shall award the prevailing party reasonable attorney's fees, witness fees and reasonable expenses, if the court finds that the party against whom the judgment is rendered acted without a reasonable basis in fact or law.

Since Karr did not prevail on her appeal, she is precluded from an award of attorney fees pursuant to I.C. § 12–117. This Court finds Karr did not act without a reasonable basis in fact or law and the appeal was not pursued frivolously or unreasonably, and therefore Respondents are not entitled to attorney fees.

Additionally, both Karr and Respondents have requested attorney fees pursuant to 42 U.S.C. § 1988. This section allows courts to award the prevailing party attorney fees in actions seeking to enforce section 1983 claims. Since Karr has not prevailed on the merits of her first amendment claim, she is not entitled to attorney fees. *See Farner v. Idaho Falls Sch. Dist. No. 91*, 135 Idaho 337, 342, 17 P.3d 281, 285 (2000). Likewise, Respondents are not entitled to attorney fees under 42 U.S.C. § 1988. Prevailing defendants are entitled to attorney fees under this section only where the action is "unreasonable, frivolous, meritless, or vexatious." *Legal Servs. of N. California v. Arnett*, 114 F.3d 135, 141 (9th Cir.1997). This Court finds Karr's claims and pursuit of the appeal were not unreasonable, frivolous, meritless, or vexatious, and therefore Respondents are not entitled to attorney fees.

### VI. CONCLUSION

We affirm the decision of the district court granting summary judgment. Costs on appeal to Respondents.

Chief Justice SCHROEDER and Justice EISMANN and WALTERS Pro Tem, concur. Justice Pro Tem KIDWELL, concurs in the result.