IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 31110

KEVIN NATION and LISA NATION, husband and wife; KLINTON HUST and NOEL HUST, husband and wife; and ANGELA GRIGSBY, an individual,

    Plaintiffs-Appellants,

v.

STATE OF IDAHO, DEPARTMENT OF CORRECTION; J.J. RENTIE JR.; GEORGE MILLER; GREG FISHER; JEFF HENRY; AL RAMIREZ; and JOHN DOES 1-5; COUNTY OF ADA; MATT STOPPELLO; GUS CAHILL,

    Defendants-Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, December 2006 Term

2007 Opinion No. 56

Filed: March 29, 2007

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Honorable Kathryn A. Sticklen, District Judge.

District court orders granting summary judgment, <u>affirmed.</u> Order awarding attorney fees, <u>vacated.</u>

White Peterson, P.A., Nampa, for appellants. Sarah Hart Arnett argued.

Hon. Lawrence G. Wasden, Attorney General and Greg Hollis Bower, Ada County Prosecuting Attorney, Boise, for respondents. Phillip J. Collaer, Deputy Attorney General and James K. Dickinson, Deputy Ada County Prosecuting Attorney argued.

---

BURDICK, Justice

Appellants appeal from two district court orders granting summary judgment to Respondents on the Appellants' federal civil rights claims and state law claims. We affirm the grant of summary judgment, but vacate the award of attorney's fees below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellants Kevin Nation, Klinton Hust and Angela Grigsby were employed as corrections officers at the Idaho State Maximum Security Institution (IMSI) by the Idaho

1

Department of Corrections (IDOC). On May 3, 2002, these three officers were assaulted by inmate David Persons. Persons threw an unidentified liquid substance from his cell, hitting the officers' bodies and faces. Following this incident, the three officers completed worker's compensation forms. The information provided on these forms included the officers' home addresses and telephone numbers, marital status, birthdates and social security numbers.

The IDOC conducted an internal investigation into Persons's assault of the officers and determined that the matter should be turned over to the Ada County Sheriff (the sheriff's office) for further criminal investigation. During the internal investigation, the worker's compensation forms were gathered and then forwarded in a package of materials to the sheriff's office. The IDOC did not redact the three officers' personal information when it forwarded the worker's compensation forms. Initially, Lieutenant James Joe Rentie, Jr., conducted the internal investigation and gathered evidence. The results of this investigation were then reviewed by Jeff Henry, IMSI Captain of Security. At the time of the investigation Greg Fisher served as the IMSI warden and George Miller served as deputy warden. Ultimately, Fisher decided to refer the matter to the sheriff's office.

In turn, the sheriff's office referred the matter to the Ada County Prosecutor, who filed criminal charges against Persons. During these proceedings, Ada County Deputy Public Defender Gus Cahill was appointed to represent Persons. Matt Stoppello, Deputy Ada County Prosecutor, forwarded the unredacted worker's compensation forms to Cahill in response to a discovery request. Cahill then provided these forms to his client, Persons, who disseminated the personal information in these forms to other inmates.

Appellants Kevin Nation and his wife Lisa Nation, Klinton Hust and his wife Noel Hust and Angela Grigsby (collectively the corrections officers) then filed suit against the Respondents: IDOC, Al Ramirez, a supervisor of corrections officers at IMSI, Fisher, Rentie, Miller and Henry (collectively the IDOC defendants), and Ada County, Cahill and Stoppello. The complaint alleged violations of the corrections officers' civil rights under 42 U.S.C. § 1983; violations of the Idaho State Constitution; negligence; intrusion into the corrections officers' private affairs; public disclosure of private facts; and intentional and negligent infliction of emotional distress. Later, the district court allowed the corrections officers to amend their complaint to include two claims for retaliation.

2

The parties stipulated to dismiss Cahill. The district court then granted summary judgment to the county and Stoppello dismissing all of the corrections officers' claims. The district court also awarded costs and attorney's fees to Cahill, Stoppello and the county. After the corrections officers filed timely appeals from these two orders, this Court remanded the case to the district court for determination of the claims against the IDOC and IDOC personnel. The district court then granted summary judgment for these defendants and awarded them costs, but not attorney's fees. Once again, the corrections officers filed a timely notice of appeal.

## II. STANDARD OF REVIEW

When reviewing a motion for summary judgment, this Court uses the same standard employed by the trial court when deciding such a motion. *Kolln v. Saint Luke's Regl. Med. Ctr.*, 130 Idaho 323, 327, 940 P.2d 1142, 1146 (1997). "[I]f the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" summary judgment is proper. I.R.C.P. 56(c). The burden is on the moving party to prove an absence of genuine issues of material fact. *Evans v. Griswold*, 129 Idaho 902, 905, 935 P.2d 165, 168 (1997). In addition, this Court views the facts and inferences in the record in favor of the non-moving party. *Id*.

This Court exercises free review over questions of law. *Rahas v. Ver Mett*, 141 Idaho 412, 414, 111 P.3d 97, 99 (2005) (citing *Kelly v. Silverwood Estates*, 127 Idaho 624, 631, 903 P.2d 1321, 1328 (1995)).

## III. ANALYSIS

We will first examine whether the defendants were entitled to summary judgment on the corrections officers' section 1983 claims and then whether they were entitled to summary judgment on the correction officers' state law claims. Additionally, we will determine whether the district court erred by awarding attorney's fees and costs below and then determine whether we should award attorney's fees on appeal.

### A. Section 1983 Claims

The corrections officers brought suit under section 1983 for violations of their constitutional right to privacy. 42 U.S.C. § 1983 provides that every person who acts under the color of state law to deprive another of a constitutional right shall be answerable to that person in

a suit for damages.[1]  The correction officers argue that the district court erred by dismissing Stoppello and the county and then the IDOC defendants through summary judgment.  The district court found that Stoppello was entitled to absolute immunity and that the county and IDOC defendants were entitled to qualified immunity.  Since different theories underpin immunity for Stoppello, the county and the IDOC defendants, we will analyze separately whether each is liable under section 1983.

### 1. Stoppello

"Section 1983, on its face admits of no defense of official immunity."  *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993).  This statute, however, "is to be read in harmony with general principles of tort immunities and defenses rather than in derogation of them."  *Imbler v. Pachtman*, 424 U.S. 409, 418 (1976).  The Supreme Court of the United States has recognized that some officials are entitled to absolute immunity from suit under section 1983.  *Buckley,* 509 U.S. at 268-69.  The official seeking immunity bears the burden of proving he or she is entitled to absolute immunity because such immunity is justified by the function in question.  *Id*. at 269.  Absolute immunity is only sparingly recognized for state actors.  *Forrester v. White*, 484 U.S. 219, 224 (1988).  It should not be extended "further than its justification would warrant."  *Harlow v. Fitzgerald*, 457 U.S. 800, 811 (1982).

Prosecutorial immunity from section 1983 suits was first recognized in *Imbler*.  There, the Court recognized that the common law rule of immunity was well settled, 424 U.S. at 424, and was based upon the concern that "harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust."  *Id.* at 423.  The Court then held that prosecutors are entitled to absolute immunity for activities intimately associated with the judicial phase of the criminal process—initiating a

---

[1] This statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C § 1983.

prosecution and presenting the state's case. *Id*. at 430-31. This approach focuses on the conduct for which immunity is claimed, not whether that conduct was lawful or may have caused harm. *Buckley*, 509 U.S. at 271. This conduct can include actions away from the courtroom and includes acts which occur in the course of a prosecutor acting as an advocate for the state. *Id*. at 272-73.

Finding immunity was error, the corrections officers assert, because Stoppello was not performing an advocacy role when he disclosed the unredacted forms in discovery, but rather was performing an administrative role. Stoppello contends that he was acting as an advocate for the state when he provided discovery to Persons, and therefore he is entitled to immunity. The issue for this Court to determine, then, is whether disclosing documents during criminal discovery is an act intimately associated with the judicial phase of the criminal process that occurs when the prosecutor is acting as an advocate for the state.

Two other state appellate courts have examined a nearly identical issue—whether to afford prosecutors absolute immunity for discovery actions—and determined absolute immunity should apply. In *Arizona v. Superior Court of the State of Arizona*, that state's court of appeals determined that a prosecutor was absolutely immune from suit under section 1983 for discovery violations. 921 P.2d 697, 701 (Ariz. App. 1996). The court reasoned that "absolute immunity applies, since the conduct of discovery is both quasi-judicial and within the prosecutor's authority." *Id*. Under a factual situation virtually identical to the instant case, the Minnesota Court of Appeals held that a prosecutor was immune for releasing information in response to a discovery request. *S.J.S. v. Faribault County*, 556 N.W.2d 563, 566 (Minn. App. 1996). There, a prosecutor released the transcript of a minor relating details of incidents of criminal sexual conduct. *Id*. at 565. The transcript contained the minor's full name, and the criminal defendant shared this information with his friends and kept the copy provided by his attorney on his coffee table. *Id*. The minor brought suit against the prosecutor, arguing that releasing the minor's unedited statement in response to a discovery request and complying with a discovery request was "not a function inherent in initiating or maintaining a criminal action." *Id*. at 566. The court disagreed, reasoning that "[c]omplying with discovery requests is an integral part of the prosecutor's adversarial role and a function inherent in maintaining criminal actions." *Id*.

We hold that conducting discovery is an activity intimately associated with the judicial phase of a criminal case and that a prosecutor conducting discovery is acting as an advocate for

5

the state. As such, the district court did not err when it afforded Stoppello immunity from the corrections officers' section 1983 actions.

### 2. Ada County

Local governments can be sued directly under section 1983 where a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" deprives an individual of his or her constitutional rights. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690 (1978). Additionally, governmental entities may be sued if their unofficial custom works a constitutional deprivation. *Id.* However, a governmental entity cannot be held liable under section 1983 for *respondeat superior*. *Id.* at 691. Therefore, the county can only be held liable if the actions conducted pursuant to its official policies or customs caused a constitutional deprivation. *See id.* (cited in *Limbert v. Twin Falls County*, 131 Idaho 344, 347, 955 P.2d 1123, 1126 (Ct. App. 1998)).

The corrections officers argue that the district court erred when it granted Ada County immunity from suit under section 1983 because there was a genuine issue of material fact as to whether the county had an unwritten policy of releasing unredacted victim statements. Instead, the corrections officers argue, the court should have recognized that the county having released another correction officer's unredacted information in an unrelated case created an issue of fact precluding summary judgment.

However, all the evidence before us indicates that the county has a policy of redacting victim information to protect that person's privacy. While the corrections officers assert that the release of unredacted forms here and in a prior instance show that that county's policy is actually the opposite, examples of instances when the county's policy was breached do not lead to the conclusion that the county had a policy of releasing unredacted victim statements. Indeed, the evidence of this instance of disclosure and only one other instance of releasing this type of information leads to the conclusion that the county had a policy to redact information. Therefore, there is no genuine issue of material fact that the county had an official policy causing a constitutional deprivation, and we hold that the district court did not err when it determined the county cannot be liable under section 1983.

### 3. IDOC Defendants

The corrections officers also argue that the district court erred in ruling that the IDOC defendants were immune from suit. They contend that the court erroneously ruled that the

6

corrections officers did not have a constitutional right to privacy and erroneously ruled that the IDOC defendants acted reasonably.

The contours of qualified immunity are the same under both Idaho and Federal law; generally government officials performing discretionary functions are shielded from civil liability as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818-19; *Lubcke v. Boise City/Ada County Housing Authority*, 124 Idaho 450, 462-63, 860 P.2d 653, 665-66 (1993). The issue of whether an official should have known that he or she acted unlawfully is a question of law. *Saucier v. Katz*, 533 U.S. 194, 197 (2001); *Lubcke*, 124 Idaho at 462, 860 P.2d at 665. In order to determine whether an individual is entitled to qualified immunity, the Court must undertake a three-part analysis. *Saucier*, 533 U.S. at 201-206; *Arnzen v. State*, 123 Idaho 899, 904, 854 P.2d 242, 247 (1993). First, taken in the light most favorable to the party asserting immunity, did the alleged conduct violate a constitutional right? Next, did the conduct of the party asserting qualified immunity violate a clearly established right of the party claiming the violation? Finally, was the conduct of the party asserting qualified immunity reasonable? *Saucier*, 533 U.S. at 201-06; s*ee also Farnworth v. Femling*, 125 Idaho 283, 285-86, 869 P.2d 1378, 1380-81 (1994). We will examine each of these steps to determine if the IDOC defendants are entitled to qualified immunity.

We must first determine whether the corrections officers had a constitutional right to privacy. The constitutional right to a zone of privacy has been established in certain areas. *Griswold v. Connecticut*, 381 U.S. 479, 483 (1965). However, the exact contours of this right are uncertain even in the cases which may implicate a constitutional right against the *indiscriminate public disclosure of social security numbers. See In re Crawford,* 194 F.3d 954, 958 (9th Cir. 1999). There is no clear constitutional consensus on whether the indiscriminate public disclosure of social security numbers when accompanied by names and addresses infringes the right to informational privacy. However, in this case we do not need to reach whether there is this constitutional right since there was no indiscriminate public disclosure. We hold that the IDOC defendants' actions did not implicate a constitutional right and therefore, the district court did not err when it granted them qualified immunity. Nonetheless, we recognize the serious potential for great harm when certain personal information is indiscriminately released to the public.

7

**B. State Law Claims**

The corrections officers argue that the district court erred by extending immunity to Stoppello and the county on their state law claims. They also argue that the district court erred in granting the IDOC defendants' motion for summary judgment on the state law claims. We will first address whether immunity should extend to protect Stoppello and the county from suit. We will then discuss whether the district court properly dismissed the state law claims against the IDOC defendants.

1. Prosecutorial immunity

On summary judgment, the district court ruled that the absolute prosecutorial immunity from suit applicable to the section 1983 claims against Stoppello should extend to protect him and the county against the corrections officers' state law claims. On appeal Stoppello and the county assert that the same absolute prosecutorial immunity which protects Stoppello from suit under section 1983 also protects them from the corrections officers' state law claims.

Idaho has never recognized absolute prosecutorial immunity, but absolute prosecutorial immunity was recognized at common law. *See Imbler*, 424 U.S. at 423-24. This absolute immunity is based on public policy. Fear of harassment by "unfounded litigation" could cause a "deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Id*. at 423. Therefore, in order to have unimpeded prosecutors who administer their duties with "courage and independence" we afford them absolute immunity for their quasi-judicial functions. *Id*.[2]

Since Idaho recognizes the common law when it is not "repugnant to, or inconsistent with" constitutional or state law, I.C. § 73-116, this Court now explicitly recognizes absolute prosecutorial immunity for activities intimately associated with the judicial phase of the criminal process. We hold, therefore, that Stoppello and the county are immune from the corrections officers' state law claims because responding to discovery is a quasi-judicial function.

---

[2] Additionally, many of our sister states which have considered the issue have determined that absolute prosecutorial immunity applies when prosecutors act in a quasi-judicial manner. *See State v. Superior Court of Arizona*, 921 P.2d 697, 700-701 (Ariz. App. 1996); *Holsey v. Hind*, 377 S.E.2d 200, 200-201 (Ga. Ct. App. 1988); *Whirty v. Lynch*, 539 N.E.2d 1064 (Mass. App. 1989); *Smith v. Butte-Silver Bow County*, 878 P.2d 870, 873 (Mont. 1994); *Musso-Escude v. Edwards*, 4 P.3d 151, 158-59 (Wash. App. 2000); *Blake v. Rupe*, 651 P.2d 1096, 1100-01 (Wyo. 1982).

2.  Invasion of privacy

The corrections officers argue that the district court erred when it dismissed their invasion of privacy claims.  In their second amended complaint, the corrections officers allege that the Respondents (except Ramirez) violated their right to privacy by public disclosure of private facts.  The district court concluded that there was no evidence that any of the defendants made a public disclosure of personal facts.

Idaho recognizes the tort of invasion of privacy with four different categories, including public disclosure of private facts.  *Jensen v. State*, 139 Idaho 57, 62, 72 P.3d 897, 902 (2003).  In order to make out a claim for public disclosure of private facts "there must be a public disclosure [and] the facts disclosed must be entitled to be private."  *Hoskins v. Howard*, 132 Idaho 311, 317, 971 P.2d 1135, 1141 (1998).  Additionally, "the matter made public must be one which would be offensive and objectionable to a reasonable man of ordinary sensibilities."  *Baker v. Burlington N., Inc.*, 99 Idaho 688, 691, 587 P.2d 829, 832 (1978) (quoting *Peterson v. Idaho First Nat. Bank*, 83 Idaho 578, 583, 367 P.2d 284, 287 (1961)).  There is no dispute that the unredacted worker's compensation forms contained private information and a reasonable person would not want those facts made public.  It is left for this Court to decide, then, whether there was a public disclosure of these private facts.

In *Baker*, we noted that a public disclosure did not occur when the record indicated that only a limited number of persons received the private information and those persons had a right to know the information.  99 Idaho at 691, 587 P.2d at 832.[3]  It is clear from the record, and the parties agree that the unredacted forms were collected by IDOC and then disclosed to the sheriff's office.  In turn, the sheriff's office turned these forms over to the Ada County Prosecutor and then deputy prosecutor Stoppello disclosed them to Cahill pursuant to a discovery request.  Cahill then shared this information with Persons, his client.  Persons, in turn, disseminated the private information contained on the forms to the public, other inmates at IMSI.

As in *Baker*, the parties who received copies of the unredacted forms were all entitled to the information.  Only the inmates who received the private information from Persons were not entitled to the information.  IDOC and the Idaho Industrial Commission were entitled to collect identifying information because worker's compensation claims were being filed.  In turn, the

_____

[3] This Court, however, assumed that public disclosure existed because the case was before them on a motion for summary judgment.  99 Idaho at 692, 587 P.2d at 833.

9

sheriff's office and the Ada County Prosecutor were entitled to have the identifying information for investigatory and prosecutorial purposes. Likewise, Cahill and Persons were entitled to the unredacted forms in order to authenticate them and defend against any restitution claim. Moreover, under the Idaho Public Records Act, title 9, chapter 3, Idaho Code, these records are exempt from public disclosure. I.C. §§ 9-340B(1); 9-335. The information here was an investigatory record, I.C. § 9-337(6), and the IDOC, sheriff's office and Ada County Prosecutor are law enforcement agencies, I.C. § 9-337(7). Therefore, none of the IDOC defendants publicly disclosed private information and the corrections officer's claims for invasion of privacy must fail since they cannot establish a prima facie element of that tort.

We affirm the district court's dismissal of the corrections officers' invasion of privacy claim. However, we also note that disclosing this type of identifying information is not the best practice. Rather, investigatory agencies should redact this type of information, and if it becomes evidence in a prosecution the attorneys should request *in camera* reviews of the evidence for authentication purposes.

### 3. Negligence

The corrections officers argue that the district court erred in dismissing their negligence claims. A cause of action for common law negligence in Idaho has four elements: "(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage." *O'Guin v. Bingham County*, 142 Idaho 49, 52, 122 P.3d 308, 311 (2005) (quoting *Black Canyon Racquetball Club, Inc. v. Idaho First Natl. Bank, N.A.,* 119 Idaho 171, 175-76, 804 P.2d 900, 904-05 (1991)). The corrections officers argue that the IDOC defendants (except Ramirez) breached the duty of care owed the corrections officers. The source of this duty, they contend, comes from IDOC's internal policies, the Idaho Public Records Act, and the foreseeability of harm from releasing unredacted records. Whether a duty exists is a question of law over which this Court exercises free review. *Turpen v. Granieri*, 133 Idaho 244, 247, 985 P.2d 669, 672 (1999). We will address each of the alleged sources of duty in turn.

First, the corrections officers insist that IDOC policy 225 creates a duty in IDOC. IDOC policy 225 provides that information in the employee's personnel file, including "marital status, birth date, address, [and] home telephone number . . . shall remain confidential." However, certain persons are allowed access to an employee's personnel file. The corrections officers

10

insist that by adopting this policy, IDOC recognized it had a duty to protect employees against invasion of privacy and other unreasonable, foreseeable risks of harm created by the disclosure of personal information. The IDOC defendants contend that these internal policies cannot create a duty in tort.

The IDOC defendants are correct. In order to support a private cause of action in Idaho, an agency's internal policies must have been adopted pursuant to the Idaho Administrative Procedures Act. *Service Employees Intern. Union, Local 6 v. Idaho Dept. of Health & Welfare*, 106 Idaho 756, 759, 683 P.2d 404, 407 (1984); *see also Mallonee v. State*, 139 Idaho 615, 620, 84 P.3d 551, 556 (2004). As this Court explained in *Service Employees International Union*, an agency's internal handbook must be construed as internal guidelines if not adopted under the procedures set out in IDAPA; it does not have the "force and effect of law" and does not give rise to a "cause of action based on an alleged violation." 106 Idaho at 759, 683 P.2d at 407.

Here, the corrections officers presented no evidence that IDOC's internal policies were adopted under the procedures set out in IDAPA. Thus, an alleged breach of these IDOC policies cannot give rise to a private cause of action because the policy is not a source of duty. We conclude, therefore, that the district court properly determined that IDOC policy 225 could not support the corrections officers' negligence claims.

Second, the corrections officers also assert that the IDOC defendants violated the Idaho Public Records Act and such a violation constitutes negligence *per se*. They assert that I.C. § 9-340C(1) requires government agencies protect their employees' information from public disclosure.[4]

---

[4] This subsection provides:
> The following records are exempt from disclosure:
> (1) Except as provided in this subsection, all personnel records of a current or former public official other than the public official's public service or employment history, classification, pay grade and step, longevity, gross salary and salary history, status, workplace and employing agency. All other personnel information relating to a public employee or applicant including, but not limited to, information regarding sex, race, marital status, birth date, home address and telephone number, applications, testing and scoring materials, grievances, correspondence and performance evaluations, shall not be disclosed to the public without the employee's or applicant's written consent. Names of applicants to classified or merit system positions shall not be disclosed to the public without the applicant's written consent. Disclosure of names as part of a background check is permitted. Names of the five (5) final applicants to all other positions shall be available to the public. If such group is less than five (5) finalists, then the entire list of applicants shall be available to the public. A public official or authorized representative may inspect and copy his personnel records, except for material used to screen and test for employment.

11

"[I]n Idaho, it is well established that statutes and administrative regulations may define the applicable standard of care owed, and that violations of such statutes and regulations may constitute negligence *per se.*" *Sanchez v. Galey*, 112 Idaho 609, 617, 733 P.2d 1234, 1242 (1986). In order to replace a common law duty of care with a duty of care from a statute or regulation, the following elements must be met: (1) the statute or regulation must clearly define the required standard of conduct; (2) the statute or regulation must have been intended to prevent the type of harm the defendant's act or omission caused; (3) the plaintiff must be a member of the class of persons the statute or regulation was designed to protect; and (4) the violation must have been the proximate cause of the injury. *Ahles v. Tabor*, 136 Idaho 393, 395, 34 P.3d 1076, 1078 (2001) (citing *Sanchez*, 112 Idaho at 617, 733 P.2d at 1242. "The effect of establishing negligence *per se* through violation of a statute is to conclusively establish the first two elements of a cause of action in negligence...." *Slade v. Smith's Mgmt. Corp.*, 119 Idaho 482, 489, 808 P.2d 401, 408 (1991). "Negligence *per se* lessens the plaintiff's burden only on the issue of the 'actor's departure from the standard of conduct required of a reasonable man.'" *Ahles*, 136 Idaho at 395, 34 P.3d at 1078 (quoting Restatement (Second) of Torts § 288B cmt. B (1965)). "Thus, the elements of duty and breach are 'taken away from the jury.'" *Id*. (quoting Prosser and Keeton on Torts 230 (5th ed.1984)).

Here, the Public Records Act does not create a duty in negligence because it was not intended to prevent the type of harm the defendants' actions caused. The Idaho Public Records Act does not create a substantive right to bring a negligence suit. Instead, it creates the procedure by which third parties may request public information. Additionally, while the legislature did exempt certain information from the Public Records Act, it is clear that the legislature did not intend to create a cause of action. Idaho Code § 9-345 allows for a penalty to be assessed against a public official who "deliberately and in bad faith improperly refuses a legitimate request" for information under the act. However, the penalty is to be paid into the general account. Likewise, I.C. § 9-343 provides that the sole remedy for a "person aggrieved by the denial of a request for disclosure" is to institute proceedings to compel disclosure. Clearly, the legislature created the act to allow public access and did not intend to prevent harm caused by public disclosure of private information. Thus, I.C. § 9-340C(1) cannot be used to establish negligence *per se*.

12

Third, the corrections officers assert that the disclosure of private information by the IDOC created a "foreseeable unreasonable risk of harm" which established a duty owed by the IDOC defendants to the corrections officers. The corrections officers insist that the IDOC defendants "were well aware of the risks presented by disclosure of IDOC employees' personal and confidential information to *IDOC inmates*." They also insist that the IDOC defendants "knew the risks generally associated with automatically disclosing corrections officers' personal and confidential information to be used as *prosecution's evidence*."

Every person has a "duty to exercise ordinary care to 'prevent unreasonable, foreseeable risks of harm to others.'" *Turpen,* 133 Idaho at 247, 985 P.2d at 672. When asked to recognize a duty not previously recognized, this Court must consider:

> [T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.

*Id*. (quoting *Rife v. Long*, 127 Idaho 841, 846, 908 P.2d 143, 148 (1995) (quoting *Isaacs v. Huntington Meml. Hosp*., 695 P.2d 653, 658 (1985)).

The IDOC defendants argue that the Court should recognize a strong public policy favoring cooperation with criminal investigations, recognize that the decision to institute a criminal prosecution (and make the records subject to discovery) lies with the prosecutor, and recognize that because of this the IDOC defendants had no control over the disclosure of the records to the public. Additionally, the IDOC defendants assert that when the records were forwarded to the sheriff's office it was not foreseeable that, ultimately, the unredacted forms would be "produced to attorney Cahill in violation of the Prosecutor's Office's own internal policy."

Here, we hold that IDOC did not have a duty. To begin, there was little forseeability of harm to the corrections officers. The IDOC defendants released the unredacted forms to the sheriff's office. At that time the forms were not subject to public release. Moreover, the IDOC had no way to foresee whether the sheriff's office would forward the investigation records on to the prosecutors, whether the prosecutor would decide to file criminal charges, and whether the unredacted forms would then be released in discovery. Next, there is a distant connection

13

between the IDOC defendants' actions and the injury. The unredacted forms were disclosed at least three more times after the IDOC defendants forwarded them to the sheriff's office and before Persons disclosed the records to other inmates.

Additionally, the disclosure took place in the context of a criminal investigation and criminal prosecution. Until Persons released the information to his fellow inmates, every person with access to the information had a legitimate need to know the information. Therefore, while the ultimate harm to the corrections officers was great, we hold that the IDOC defendants did not have a duty in negligence to not release the unredacted forms to the sheriff's office in this instance.

4. Negligent infliction of emotional distress

The corrections officers argue that the district court incorrectly relied on *Thomas v. Medical Center Physicians, P.A.*, 138 Idaho 200, 61 P.3d 557 (2002), to support its decision to dismiss the negligent infliction of emotional distress claims. The district court reasoned: "Since no independent legal duty has been demonstrated, the claims for negligent infliction of emotional distress also fail."

We affirm the district court's dismissal of these claims. While Idaho recognizes the tort of negligent infliction of emotional distress, the trial court correctly recognized that there must be a breach of a recognized legal duty in order to support a claim for negligent infliction of emotional distress. Since, as discussed *supra*, there was no duty in negligence in this instance, the corrections officers cannot support a claim for negligent infliction of emotional distress.

5. Intentional infliction of emotional distress

The corrections officers argue that the district court erred when it decided as a matter of law that the IDOC defendants' conduct was not extreme and outrageous. Instead, the corrections officers contend, the fact that the IDOC defendants released the unredacted forms "despite the foreseeable unreasonable risk of harm" and without notifying the sheriff's office that the form contained confidential information raises a genuine issue of material fact for the jury to decide.

Under Idaho law, a claim for intentional infliction of emotional distress has four elements: "(1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe." *Edmondson v. Shearer*

14

*Lumber Prods.*, 139 Idaho 172, 179, 75 P.3d 733, 740 (2003) (citing *Curtis v. Firth*, 123 Idaho 598, 601, 850 P.2d 749, 751 (1993)). As we have previously explained,

> "[a]lthough a plaintiff may in fact have suffered extreme emotional distress ... no damages are awarded in the absence of extreme and outrageous conduct by a defendant." *Edmondson*, 139 Idaho at 179, 75 P.3d at 740 (quoting *Brown v. Fritz*, 108 Idaho 357, 362, 699 P.2d 1371, 1376 (1985)). "Courts have required very extreme conduct before awarding damages for the intentional infliction of emotional distress." *Edmondson*, 139 Idaho at 180, 75 P.3d at 741. "Even if a defendant's conduct is unjustifiable, it does not necessarily rise to the level of 'atrocious' and 'beyond all possible bounds of decency' that would cause an average member of the community to believe it was 'outrageous.'" *Id*. (quoting *Ford v. Revlon, Inc*., 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987)).

*Estate of Becker v. Callahan*, 140 Idaho 522, 527, 96 P.3d 623, 628 (2004). Whether a defendant's conduct is so extreme and outrageous as to permit recovery is a matter of law. *Edmondson*, 139 Idaho at 180, 75 P.3d at 741.

Here, summary judgment was appropriate because the IDOC defendants' conduct was not so extreme or outrageous that the corrections officers should be awarded damages. Conducting a criminal investigation and releasing pertinent documents to other law enforcement agencies is not "atrocious" or "beyond all possible bounds of decency." This conduct is not so extreme as to allow the claim to go forward. As such, we affirm the district court's dismissal of this claim.

### 6. Retaliation

Kevin Nation and Grigsby each brought a retaliation claim against IDOC and certain IDOC personnel.[5] Grigsby alleges that she was removed from the IMSI hostage negotiation team, wrongly criticized on employment evaluations and that her work schedule was changed; this retaliation, she maintains was a result of her choice to exercise "her rights under state and federal law." As a result of this, Grigsby alleges, she suffers emotional distress and seeks $50,000 in damages. Likewise, Kevin Nation alleges that he was removed from the IMSI tactical team, wrongly criticized on employment evaluations and that his work schedule was changed. He also alleges that this was retaliation for exercising his rights and that he has suffered emotional distress. He also seeks $50,000 in damages.

---

[5] Grigsby brings her retaliation claims against IDOC, Fisher, Miller, Henry and Ramirez. Kevin Nation brings his retaliation claims against IDOC, Fisher, Miller and Henry.

15

The district court dismissed these claims on summary judgment. It reasoned that Grigsby and Kevin Nation had failed to exhaust their administrative remedies because they did not pursue any grievance procedure under I.C. § 67-5315. It also found that the retaliation claims did not sound in tort, but were the types of claims the state administrative grievance procedures were designed to address.

On appeal, Grigsby and Kevin Nation argue that they are not required to exhaust their administrative remedies because, as the Court of Appeals recognized in *Pounds v. Denison*, 115 Idaho 381, 766 P.2d 1262 (Ct. App. 1988), the Idaho Personnel Systems Act, title 67, chapter 53, Idaho Code, does not apply to tort claims. Since their retaliation claims sound in tort, they argue, it was proper to bring them to district court and the claims should not have been dismissed. The IDOC defendants rely on *Peterson v. City of Pocatello*, 117 Idaho 234, 786 P.2d 1136 (Ct. App. 1990), to argue that the corrections officers were required to exhaust their administrative remedies because the administrative agency has the jurisdiction to change the adverse employment decisions.

"Before a court will hear an appeal from an agency adjudication, a litigant must normally exhaust the administrative remedies that agency makes available." *Owsley v. Idaho Indus. Commn.*, 141 Idaho 129, 135, 106 P.3d 455, 461 (2005) (citing *Dept. of Agric. v. Curry Bean Co. Inc.*, 139 Idaho 789, 792, 86 P.3d 503, 506 (2004)). If an administrative remedy is provided by statute, "relief must first be sought by exhausting such remedies before the courts will act." *White v. Bannock County Commrs*, 139 Idaho 396, 401, 80 P.3d 332, 337 (2003) (citing *McKart v. United States*, 395 U.S. 185 (1969); *Pounds*, 115 Idaho 381, 766 P.2d 1262). "No one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Id*. (citations omitted). With exceptions, the doctrine of exhaustion generally requires that the case run the full gamut of administrative proceedings before an application for judicial relief may be considered. *Id*. Dismissal of a claim is warranted if a claimant fails to exhaust administrative remedies. *Id*. The purpose of this rule "is simple; it provides the administrative body with the opportunity to mitigate or cure personnel grievances without judicial intervention." *Peterson*, 117 Idaho at 236, 786 P.2d at 1138.

Here, the district court correctly dismissed the retaliation claims for failure to exhaust administrative remedies. The law in Idaho is clear: in employment actions tort claims must first be pursued through the administrative body. *Id*. at 236-38; *see Arnzen v. State*, 123 Idaho 899,

16

901, 906-07, 854 P.2d 242, 244, 249-50 (1993). In both *Peterson* and *Arnzen*, the employee sought damages for allegedly tortious conduct. *Peterson*, 117 Idaho at 236, 786 P.2d at 1138 ("Peterson alleged that his termination . . . constituted tortious interference with his employment contract."); *Arnzen*, 123 Idaho at 901, 854 P.2d at 244 ("Arnzen prayed for damages for violation of his civil rights, wrongful discharge, and failure to give notice and an opportunity to be heard."). In both cases, the district court properly dismissed the actions for failure to exhaust administrative remedies even though the actions complained of were tortious. The actions in those instances were closely tied to the adverse employment actions, and therefore the plaintiffs were required to exhaust their administrative remedies before they could seek judicial intervention.

Here, Grigsby and Kevin Nation seek damages for allegedly tortious conduct. However, this conduct is closely tied to the adverse employment action. Allowing their claims to go forward in district court would deprive the administrative body of "the opportunity to mitigate or cure personnel grievances." *Peterson*, 117 Idaho at 236, 786 P.2d at 1138. Therefore, we affirm the district court's dismissal of the retaliation claims on summary judgment.

## C. Attorney's Fees and Costs Below

The corrections officers argue that the district court's award of attorney's fees to the county, Stoppello and Cahill should be reversed. The district court awarded attorney's fees pursuant to 42 U.S.C. § 1988. Prevailing defendants are entitled to attorney fees under this section only where the action is "unreasonable, frivolous, meritless, or vexatious." *Legal Servs. of N. California v. Arnett*, 114 F.3d 135, 141 (9th Cir. 1997). "Generally, awards of attorney fees pursuant to 42 U.S.C. § 1988 are reviewed under an abuse of discretion standard." *Miller v. Ririe Joint Sch. Dist*. No. 252, 132 Idaho 385, 387, 973 P.2d 156, 158 (1999) (citing *Shields v. Martin*, 109 Idaho 132, 141, 706 P.2d 21, 30 (1985)). "Any elements of legal analysis which figure in the district court's decision are, however, subject to de novo review." *Id*. (citing *Corder v. Brown*, 25 F.3d 833, 836 (9th Cir. 1994)). In this instance, the corrections officers' action was not unreasonable, frivolous, meritless or vexatious. As such, the district court erred in awarding attorney's fees.

The corrections officers also contend that the district court's award of costs pursuant to I.R.C.P. 54(d)(1) to the IDOC defendants, the county, Stoppello and Cahill was an abuse of discretion because the award of summary judgment was erroneous. Rule 54(d)(1) provides for

the award of costs as a matter of right to the prevailing party. Since we affirm the district court's award of summary judgment, we also affirm the court's award of costs as a matter of right.

## D. Attorney's Fees on Appeal

On appeal the corrections officers, Ada County and Stoppello all seek attorney's fees pursuant to 42 U.S.C. § 1988 and I.C. §§ 6-918A, 12-117, 12-120, 12-120(3) and 12-121. We will address the award of attorney's fees under each of these statutes in turn.

To begin, 42 U.S.C. § 1988 allows courts to award the prevailing party attorney fees in actions seeking to enforce section 1983 claims. Since the corrections officers do not prevail on their civil rights claims, they are not entitled to attorney fees. *See Farner v. Idaho Falls Sch. Dist. No. 91*, 135 Idaho 337, 342, 17 P.3d 281, 285 (2000). However, their appeal was not "unreasonable, frivolous, meritless, or vexatious," *see Legal Servs. of N. California*, 114 F.3d at 141, so Ada County and Stoppello are not entitled to attorney's fees.

Next, I.C. § 6-918A allows the Court to award "appropriate and reasonable attorney fees" to the "claimant, the governmental entity or the employee of such governmental entity, as costs, in actions under this act, upon petition therefore and a showing, by clear and convincing evidence, that the party against whom or which such award is sought was guilty of bad faith in the commencement, conduct, maintenance or defense of the action." Here, there is no evidence that either party commenced, conducted, maintained or defended the action in bad faith. As such, we decline to award attorney's fees under this section of the Idaho Code.

Both I.C. § 12-117 and § 12-121 permit the award of attorney's fees to the prevailing party if the court determines the case was brought, pursued or defended frivolously, unreasonably or without foundation. *Karr v. Bermeosolo*, 142 Idaho 444, 449, 129 P.3d 88, 93 (2005) (discussing I.C. § 12-117); *Mutual of Enumclaw Ins. Co. v. Pedersen*, 133 Idaho 135, 139, 983 P.2d 208, 212 (1999) (discussing I.C. § 12-121). Here, since the corrections officers do not prevail on appeal, they are not entitled to an award of attorney's fees under either of these statutes. However, because the corrections officers did not bring this appeal unreasonably or without foundation neither the County nor Stoppello is entitled to attorney's fees.

Finally, I.C. § 12-120 simply does not support the award of attorney's fees in this action. It provides for the award of attorney's fees where "the amount pleaded is twenty-five thousand dollars ($25,000) or less." Since the amount pleaded far exceeds this limit ($75,000 for the civil rights claims alone), I.C. § 12-120 is not a statutory basis to award fees in this instance.

## IV. CONCLUSION

We affirm the district court's award of summary judgment and costs as a matter of right. We vacate the district court's award of attorney's fees. We decline to award attorney's fees on appeal. Costs to Respondents.

Justices TROUT, EISMANN and KIDWELL, Pro tem, **CONCUR.**

Chief Justice SCHROEDER **DISSENTING.**

I respectfully dissent from the Court's conclusion in part III, 3 that the Idaho Department of Correction is immune from liability because there was no indiscriminate public disclosure of its employees' private information. According to *Webster's II New Riverside University Dictionary* "indiscriminate" includes "not properly restrained." The degree of restraint necessary should be governed by the type of information disclosed, the steps taken to assure that the information does not pass into improper hands and the potential consequences to the employees if it does.

The information in this case included the officers' home addresses, telephone numbers, marital status, birthdates and social security numbers. This is very personal and mostly irrelevant to the criminal investigation. If the prosecutor or sheriff needed to know a social security number, a home address, or marital status he should have been called upon to request that information with guarantees of proper protection. How this information is relevant to whether Persons threw an unidentified liquid (perhaps urine?) in the officers' faces escapes the simple mind.

There is no showing the Department took any steps to assure that the information did not pass into improper hands. Reliance on somebody else doing the job of maintaining privacy does not excuse its default.

The consequences are grave. There are few groups that need the protection of privacy more than correction officers. The potential for harassment at best, at worst physical harm to themselves or their children or spouses is significant. The threat of identity theft hangs over their financial lives.

Against this background is total disregard by the Department of its employees' physical and financial safety. Despite the terrible consequences of this case, the Department's attorney at oral argument stated no remedial action had been taken to avoid such future consequences. In fact the Department will continue to disclose irrelevant personal information in exactly the same

19

way as it did in this case regardless of the possible harm to its employees, their children and spouses.  Perhaps it is time for the legal splash of cold clear water in the Department's face to wake it up to the indecency of its conduct in the past, and as it assures us, its irresponsible conduct in the future.