988 P.2d 1193

Jeff SMITH, Plaintiff–Appellant,

v.

BOARD OF CORRECTIONS, a subdivision of the State of Idaho, Correctional Industries, a subdivision of the State of Idaho, Department of Corrections under the State of Idaho, Joe Klauser, Warden of Idaho State Correctional Institution, Paul Bjorum, Production Manager at Correctional Industries, and Estate of John Zinno, Wood Shop Supervisor, Defendants–Respondents.

Mark Mead, Plaintiff–Appellant,

v.

Board of Corrections, a subdivision of the State of Idaho, Correctional Industries, a subdivision of the State of Idaho, Department of Corrections under the State of Idaho, Joe Klauser, Warden of Idaho State Correctional Institution, Paul Bjorum, Production Manager at Correctional Industries, and Estate of John Zinno, Wood Shop Supervisor, Defendants–Respondents.

Nos. 24496, 24497.

Supreme Court of Idaho,
Boise, February 1999 Term.

Sept. 28, 1999.

E. Lee Schlender, Chartered, Hailey, for appellants.

Hon. Alan G. Lance, Attorney General; Timothy R. McNeese, Deputy Attorney General; Hall, Farley, Oberrecht & Blanton, Boise, for respondents. Donald J. Farley argued.

SCHROEDER, Justice.

This is a consolidated appeal by two inmates at the Idaho State Correctional Institution (ISCI), Jeff Smith (Smith) and Mark Mead (Mead), from summary judgments granted against them on their tort claims against the Board of Corrections and Correctional Industries (collectively referred to as the State) for injuries sustained while work-

ing in the prison's wood shop. The decision of the district court is vacated and the case is remanded for further proceedings.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

Smith and Mead are inmates at ISCI. Both suffered hand injuries on a table saw in the prison wood shop. The wood shop is part of the Correctional Industries, which is a prison work program that operates under the jurisdiction of the Department of Corrections. Correctional Industries consists of several shops which utilize inmate labor to produce goods and services to the State, municipalities and some private entities. Correctional Industries is self-sustaining and receives no state-appropriated funds.

An inmate enters the wood shop as a trainee and can be promoted to the position of apprentice (carpenter's assistant), journeyman (carpenter), assistant lead person or lead person. The inmates who have been promoted to positions with more responsibility train new inmates assigned to the wood shop. The wood shop is staffed by a civilian shop supervisor, who is a Correctional Industries employee. The shop supervisor has ultimate control and oversight of the shop, leaving the training of the inmates in the practical aspects of woodworking to the journeymen, lead persons and assistant lead persons.

### A. Mead

At the time he was injured, Mead was a carpenter's assistant working under the direction of inmate Lesley Trent (Trent), a carpenter. According to Mead, Trent instructed him to make several "stop dado" cuts in pieces of hardwood which were to be used as door rails in an office-type credenza. A stop dado cut requires the operator to force a piece of wood down onto a moving saw blade, rather than pushing the wood through the saw blade for a normal cut. Once the wood is pushed onto the moving saw blade, the operator must pull the wood back towards his body with the blade's rotation rather than against the blade's rotation. The operator must have his hand close to the moving saw blade to force the wood down on

the saw blade. According to Mead, the board on which he was working kicked back, causing his left hand to be exposed to the moving saw blade, amputating three fingers on his left hand.

### B. Smith

Smith was also injured while performing a stop dado cut in the Correctional Industries' wood shop. Smith was working as a carpenter (journeyman). According to Smith, the board on which he was working kicked back as he was making the stop dado cut, causing his left hand to be exposed to the moving saw blade and resulting in the amputation of his left index finger and a deep laceration of his left thumb.

### C. Course of Proceedings

Mead and Smith filed their complaints against the State on November 24, 1995, and January 8, 1996, respectively. Both alleged that they sustained injuries which were a direct result of the negligent and reckless, willful and wanton conduct of the State. Specifically, each claimed that several worker-inmates had been severely injured while working in the wood shop and that these injuries provided notice to the State of "the failure to train the workers, the dangerous operating condition of the wood working equipment, and the inherently dangerous cutting list requirements" the workers were given. They claimed the State was negligent because it failed to take adequate measures to remedy these problems. They also alleged the State acted recklessly, willfully and wantonly by: (1) failing to instruct the workers on the safe operation of the wood working equipment after receiving notice of the lack of training of the workers; (2) intentionally removing the safety equipment from the dado saws, knowing that removal of the safety equipment endangered the safety of the workers operating the saws; and (3) failing to investigate the prior injuries at the wood shop and failing to take measures to prevent the reoccurrence of accidents.

The State moved for summary judgment in each case. The district court granted the State's motions for summary judgment, and Mead and Smith appealed.

## II.

### STANDARD OF REVIEW

"This Court reviews a district court's ruling on a motion for summary judgment by applying the same standard properly applied by the district court when originally ruling on the motion." *Eastern Idaho Agric. Credit Assoc. v. Neibaur*, 130 Idaho 623, 625, 944 P.2d 1386, 1388 (1997). Summary judgment is appropriate " 'if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *McCoy v. Lyons*, 120 Idaho 765, 769, 820 P.2d 360, 364 (1991) (quoting I.R.C.P. 56(c)). "On review, this Court liberally construes the record in the light most favorable to the party opposing the motion, drawing all reasonable inferences and conclusions in that party's favor." *Avila v. Wahlquist*, 126 Idaho 745, 747, 890 P.2d 331, 333 (1995). "If there are conflicting inferences contained in the record or reasonable minds might reach different conclusions, summary judgment must be denied." *Bilow v. Preco, Inc.*, 132 Idaho 23, 27, 966 P.2d 23, 27 (1998).

## III.

### THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT.

The district court believed the basis for Mead's and Smith's claims was "that the State was negligent or grossly negligent in supervising the inmates in the wood shop and that this negligence was the proximate cause of [their] injuries." According to the district court, the uncontroverted facts revealed that Mead's and Smith's injuries arose out of the actions of other inmates in directing them to perform the stop dado cut and from Mead's and Smith's own conduct in performing the stop dado cuts. The district court concluded, however, that under section 6–904A(2) of the Idaho Code (I.C.), the State was immune from any claim unless Mead and Smith could show that the State had acted recklessly, willfully or wantonly in connection with removal of the safety guards from the dado saws. The district court determined that Mead's and Smith's affidavits lacked a basis

in personal knowledge. Further, the district court found no basis in the affidavits that Mead and Smith were competent to testify on the matters stated. Finally, the district court believed that portions of Mead's and Smith's statements were not admissible into evidence. The district court concluded that Mead and Smith failed to establish a genuine issue of material fact as to whether the State or its employees acted recklessly, willfully or wantonly.

### A. Negligent Supervision

This Court has outlined a three-step process in considering a motion for summary judgment with respect to a claim of governmental immunity under the Idaho Torts Claim Act:

> [T]he trial court must answer whether tort recovery is allowed under the laws of Idaho; and, if so, whether an exception to liability found in the tort claims act shields the alleged misconduct from liability; and, if no exception applies, whether the merits of the claim as presented for consideration on the motion for summary judgment entitle the moving party to dismissal.

*Harris v. State Dep't of Health & Welfare*, 123 Idaho 295, 298–99 n. 1, 847 P.2d 1156, 1159–60 n. 1 (1992).

Under I.C. § 6–904A(2) the State generally enjoys immunity from suits in which a person is injured by another under the supervision of the State. Idaho Code § 6–904A provides:

> A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent and without reckless, willful and wanton conduct as defined in section 6–904C, Idaho Code, shall not be liable for any claim which:

> ....

> 2. Arises out of injury to a person or property by a person under supervision, custody or care of a governmental entity or by or to a person who is on probation or parole or any work-release program, or by or to a person receiving services from a mental health center, hospital or similar facility.

According to this provision, the State is immune from Mead's and Smith's claims that the State was negligent when it failed to adequately supervise the worker-inmates who instructed them to perform the dado cuts.

Pursuant to I.C. § 6–904A(2), the State argues that it can only be liable for injuries to inmates when the injuries are caused by the acts or omissions of State employees. Because Mead's and Smith's injuries were allegedly caused by the acts or omissions of other inmates, the State claims there is no basis for State liability. The district court apparently agreed with the State and granted summary judgment to the State on the alternative grounds that inmates are not considered State employees under I.C. § 20–412.

 Whether inmates are State employees is not dispositive with respect to an analysis under section 6–904A(2). Section 6–904A(2) is an immunity provision; it does not restrict the State's liability to only those circumstances where an inmate is injured by the acts or omissions of a State employee. Section 6–904A(2) was intended to provide immunity to the State from the "unpredictable acts of third persons" who are under the "state's custody, supervision and care." *Harris v. State Dep't of Health & Welfare*, 123 Idaho 295, 299, 847 P.2d 1156, 1160 (1992) (emphasis deleted). Section 6–904A(2) is directly applicable to the facts of this case; it serves as a basis of immunity for the State against Mead's and Smith's claim that the State was negligent in supervising the worker-inmates who instructed Mead and Smith to perform the dado cuts. However, section 6–904A(2) does not provide absolute immunity to the State for injuries caused by persons under its supervision.

To overcome State immunity under § 6–904A(2), Mead and Smith must show that the State acted recklessly, willfully and wantonly. Idaho Code § 6–904C(2) provides that reckless, willful and wanton conduct

is present only when a person intentionally and knowingly does or fails to do an act creating unreasonable risk of harm to another, and which involves a high degree of probability that such harm will result.

 The district court concluded that the "only possible factual basis upon which Mead and Smith could sustain a charge of reckless, willful and wanton conduct [was] the absence of the safety guard on the dado saw." The district court found that there was no genuine issue of material fact as to whether the State acted recklessly, willfully, or wantonly in connection with the removal of the safety guards, stating:

The statements contained in the affidavit regarding (1) whether a safety guard on the saw would have prevented the injury; (2) when the safety guard was removed from the saw; and (3) the allegation that the safety guard was removed by an employee of the State, are all simply conclusory allegations made by the affiant without any demonstration that they are based upon the affiant's own personal knowledge, that he is competent to testify on the matters stated, or that the statements are even admissible evidence. Thus, the allegations contained in the affidavit are legally insufficient under Rule 56(e), and fail to create a genuine issue of material fact.

 "The requirements of Rule 56(e) are not satisfied by an affidavit that is conclusory, based on hearsay, and not supported by personal knowledge. Only material contained in affidavits or depositions that is based upon personal knowledge or that is admissible at trial will be considered by this Court." *State v. Shama Resources, Ltd.*, 127 Idaho 267, 271, 899 P.2d 977, 981 (1995) (citations omitted). The following excerpts from Mead's affidavit are relevant for determining its sufficiency under Rule 56(e):

4. The only training I was given was by another inmate who supposedly had carpenter experience; employees of the State directed me to follow this inmate's instruction in making "dado cuts." It was by following instructions as ordered, that the accident occurred.

6. All the proper guards on the saws which would have prevented this accident from occurring, had been removed prior to my commencement of my work at the wood shop on January 24, 1994.

10. The guards on the saws, and specifically the guard and the safety device on the saw I was operating, had been removed by the agents and employees of the

State of Idaho Correctional Institution and Idaho Department of Correction.

12. Other inmates have been injured in a same or similar manner as I was injured, utilizing the same saws that have had their guards removed, which injuries and dangerous conditions regarding the saws were known to the Defendants herein.... These Defendants knew that these saws were extremely dangerous with the guards removed, and were being operated with little or no training, and that all of these individuals, including myself, have received severe injuries, including amputations of portions of their hands by reason of the dangerous and defective conditions of these saws, including the one I was operating when I received my injuries.

Smith's affidavit has a virtually identical paragraph 12. Other relevant excerpts from Smith's affidavit include the following:

6. All the proper guards on the saws which would have prevented this accident from occurring, had been removed prior to March, 1993.

10. The guards on the saws, and specifically the guard and the safety device on the saw I was operating, had been removed by the agents and employees of the State of Idaho Correctional Institution and Idaho Department of Correction.

Mead's and Smith's affidavits are deficient in several respects. First, the affidavits do not specify which State employee[1] directed Mead or Smith to make the stop dado cuts. Second, the affidavits do not specify which agents or employees removed the safety guards, nor do they specify how Mead and Smith know this information. Finally, the affidavits do not specify the basis of Mead's and Smith's knowledge regarding the injuries to the enumerated victim-inmates, nor how Mead and Smith knew the State was aware of the dangerous condition of the saws.

Despite the shortcomings of the affidavits noted by the district court, portions of the affidavits are based on personal knowledge and do satisfy the requirements of Rule 56(e). The record establishes that Mead and Smith worked in a shop with a civilian work shop supervisor who was a State employee in the Correctional Industries work program. Mead and Smith were injured doing assigned shop work. Safety guards had been removed from the saws. A reasonable inference can be drawn that the shop supervisor knew this fact and allowed or approved operation of the shop in this manner. It can also be inferred that operating wood work within inches of an unshielded power saw is very hazardous. There is sufficient admissible evidence that a jury could find that the State's conduct was reckless, willful and wanton, because the State employee supervising the worker-inmates who instructed Mead and Smith to perform the dado cuts knew that the safety guards had been removed from the saws. Accordingly, the district court's grant of summary judgment to the State with respect to Mead's and Smith's negligent supervision claim is vacated.

**B. Direct Negligence**

In each of their respective complaints, Mead and Smith alleged direct negligence on the part of the State. Both Mead and Smith alleged that there were numerous other worker-inmates who were injured in the same or similar fashion and that these injuries provided notice to the State of the dangerous condition of the dado saws. The State has not contradicted these assertions. Mead and Smith claimed that by not correcting the dangerous condition and allowing further use of the dado saws, the State acted negligently.

The district court recognized Mead's and Smith's claims of direct negligence in its summary of the case but did not address those claims in its decision, apparently in the belief that the only possible theory of recovery was negligent supervision. There is sufficient admissible evidence to support Mead's and Smith's direct negligence claims against the State. There is uncontradicted evidence

---

1. An inmate is not considered a State employee. See I.C. § 20–412, which provides in relevant part:

Each prisoner, who is engaged in productive work in the institution under the jurisdiction of the board of correction as a part of the indus-

tries work program, may receive for his work such compensation as the board shall determine....

... No inmate compensated under this act shall be considered an employee of the state or the board of correction....

that Mead and Smith were working in Correctional Industries with a civilian work shop supervisor who had ultimate control of the entire shop. Mead and Smith were doing assigned work. The saws were unguarded. The work was hazardous. Because there is evidence of direct negligence by the State, the State is not entitled to summary judgment on this issue.

The Court will not address the question of whether there are any defenses available to the State on the claim of direct negligence.

### IV.

### CONCLUSION

The decision of the district court granting summary judgment to the State is vacated. The case is remanded for further proceedings under the theories of reckless, willful and wanton supervision and direct negligence. Costs are awarded to Mead and Smith. No attorney fees are allowed.

Chief Justice TROUT, Justices SILAK, WALTERS, and KIDWELL, concur.