# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 46403

NATALIE SHUBERT,      )
      )
  Plaintiff-Respondent,      )
      )
v.      )
      )
ADA COUNTY, a political subdivision of the   )
State of Idaho; ALAN TRIMMING, an   )    **Boise, November 2019 Term**
employee of Ada County in his   )
personal/individual and official capacities as   )    **Opinion Filed: March 12, 2020**
the Ada County Public Defender; MICHAEL   )
WARREN LOJEK, an employee of Ada   )    **Karel A. Lehrman, Clerk**
County in his personal/individual and official   )
capacities as Deputy Ada County Public   )    **SUBSTITUTE OPINION. THE**
Defender,   )    **COURT'S PRIOR OPINION**
      )    **DATED FEBRUARY 12, 2020 IS**
  Defendants-Appellants,   )    **HEREBY WITHDRAWN.**
      )
and      )
      )
JOHN and JANE DOES I to XX, whose true   )
identities are unknown,   )
      )
  Defendants.   )
_____   )

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Samuel A. Hoagland, District Judge.

The district court's order denying summary judgment is <u>affirmed</u> and the case is <u>remanded</u>.

Jan M. Bennetts, Ada County Prosecuting Attorney, Boise, for appellants. Catherine Freeman argued.

Seiniger Law, Boise and Giles & Thompson Law, PLLC, Boise, for respondent. Breck Seiniger argued.

Rainey Law Office, Boise, amicus curiae brief for Idaho Trial Lawyers Association Foundation.

1

Michael Kane & Associates, PLLC, Boise, amicus curiae brief for Idaho Association of Counties.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Public Defense Commission.

_____

BRODY, Justice.

This case arises from Natalie Shubert's negligence claim against her former public defender, Michael Lojek, former Ada County chief public defender Alan Trimming, and Ada County (collectively the "Ada County Defendants"). In 2008, Shubert was charged with two felonies and pleaded guilty to both charges. Her sentences were suspended in each case, and she was placed on probation. After a probation violation in 2011, the Ada County district court entered an order extending Shubert's probation beyond the time period allowed by law. The mistake was not caught. After Shubert's probation should have ended in both cases, she was charged and incarcerated for a subsequent probation violation in 2014. Thereafter, in 2016, Shubert was charged with a new probation violation. Shubert was assigned a new public defender, who discovered the error that unlawfully kept Shubert on probation. Shubert's new public defender filed a motion to correct the illegal sentence, raising the error that had improperly extended her probation. The district court granted Shubert's motion to correct the illegal sentence and released Shubert from custody. Shubert then sued her original public defender, the Ada County Public Defender's Officer, and other unknown Ada County employees alleging false imprisonment, intentional infliction of emotional distress, negligence per se, negligence, and state and federal constitutional violations.

The district court dismissed all of Shubert's claims except for negligence. In denying the Ada County Defendants' motion for summary judgment on Shubert's negligence claim, the district court held that public defenders are not entitled to common law quasi-judicial immunity from civil malpractice liability, and two provisions of the Idaho Tort Claims Act (ITCA) do not exempt public defenders from civil malpractice liability. The Ada County Defendants bring this permissive appeal under Idaho Appellate Rule 12. We affirm the district court's order denying summary judgment and remand the case to the district court for further proceedings.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background.

2

### 1. Shubert's criminal cases

In 2008, Shubert was appointed a public defender after being charged in two separate Ada County criminal cases. She was charged with grand theft in Ada County Case No. CR-MD-2008-0601 (GT-601). She was charged with a felony for writing checks with insufficient funds in Ada County Case No. CR-MD-2008-2880 (NSF-2880). Ada County district court judge Patrick Owen presided over both cases.

In November 2008, Shubert signed a "Guilty Plea Advisory" form for both GT-601 and NSF-2880. Shubert wrote on that form that the maximum sentence for the GT-601 case was "14 years max" and the maximum sentence for the NSF-2880 case was "3 years max." Shubert also signed an acknowledgement on that form that her guilty plea was the result of a plea agreement. Shubert also wrote on the form her understanding of the plea agreement as "2+4=6 probation up to 120 days in [j]ail" and "concurrent – 2+1=3 up to 120 days in [j]ail[.]"

Shubert alleges that Ada County deputy public defender Michael Lojek represented her from the time she was charged in GT-601 and NSF-2880 through 2016. However, the record indicates that Ada County deputy public defender Eric Rolfson signed her initial "Guilty Plea Advisory" form in 2008. Lojek does not dispute that he represented Shubert in GT-601 and NSF-2880, and began appearing with Shubert in court in 2011.

### 2. 2009 sentencing

On February 27, 2009, Shubert appeared in front of Judge Owen for sentencing in both cases. In GT-601, the district court sentenced Shubert to six years in prison, with the first two years fixed. The district court then suspended Shubert's sentence and placed her on probation for six years, expiring at midnight on February 26, 2015. In NSF-2880, the district court sentenced Shubert to three years in prison with the first two years fixed, to be served concurrently with her GT-601 sentence. Like in GT-601, the district court suspended Shubert's sentence in NSF-2880 and placed her on probation for three years, expiring on February 26, 2012. The district court subsequently entered a Judgment of Conviction, Suspended Sentence, Order of Probation and Commitment in the NSF-2880 case. Shubert signed the bottom of the document after a certification statement which read:

> This is to certify that I have read or had read to me and fully understand and accept all the conditions, regulations and restrictions under which I am being granted probation. I will abide by and conform to them strictly and fully understand that my failure to do so may result in the revocation of my probation

3

and commitment to the Board of Correction to serve the sentence originally imposed.

### 3. 2011 probation violations

On February 1, 2011, Ada County prosecutors filed a motion for a bench warrant and a probation violation in both GT-601 and NSF-2880, alleging Shubert violated the terms of her probation. An arrest warrant was issued on February 7, 2011, and Shubert was subsequently arrested on March 29, 2011. Shubert later admitted to the alleged probation violations. Judge Owen held a disposition hearing regarding Shubert's probation violations on May 20, 2011. Lojek appeared as Shubert's public defender at the hearing. On May 25, 2011, Judge Owen issued an order reinstating and amending probation in both GT-601 and NSF-2880. The orders contained an express finding that Shubert willfully and knowingly violated the terms of her probation. The orders also reinstated her probation upon the same terms and conditions originally entered but amended probation to impose a 120 day sentence in Ada County Jail with 54 days credited for time served. In issuing these orders, Judge Owen did not extend the length of probation in either of Shubert's cases. However, the orders mistakenly provided that Shubert's probation would now expire at midnight on May 19, 2017.

At a March 2016 hearing, Judge Owen clarified that this order was a mistake, and that any orders extending probation beyond February 26, 2012 in NSF-2880—the case that ultimately led to her unlawful incarceration—was entered illegally. Despite the mistaken probation end date, Shubert signed a certification accepting her probation on June 13, 2011. In a declaration, Shubert maintains that she does not recall seeing a copy of either of the mistaken orders from May 2011. Further, Shubert asserts that Lojek did not inform her that her probation was extended or set to expire at midnight on May 19, 2017, in the order reinstating and amending her probation.

### 4. NSF-2880 probation expiration

The record is not clear on exactly when Shubert's probation was supposed to end in NSF-2880. The record suggests two possible end dates: February 26, 2012, or February 2, 2013. Regardless, as a result of the mistaken May 2011 order, Shubert remained on probation in NSF-2880 and GT-601 into 2013.

### 5. 2013 probation violations

On January 4, 2013, new allegations of probation violations were filed against Shubert in both GT-601 and NSF-2880. Shubert admitted to the violations, and appeared before Judge

Owen again for a hearing on April 3, 2013, with Lojek as her attorney. Following the hearing, Judge Owen entered orders revoking probation, imposing sentence, and retaining jurisdiction in both cases. Based on the orders, Shubert entered Idaho's "rider program."

After participating in the rider program, Shubert appeared before Judge Owen for a rider review hearing on September 11, 2013. Shubert appeared with Lojek as her attorney. Judge Owen subsequently issued orders reinstating Shubert's probation in both GT-601 and NSF-2880. Specifically, in an order issued on September 17, 2013, for NSF-2880, Judge Owen provided that Shubert's probation now expired on September 10, 2016. Separately, in GT-601, Judge Owen entered an order reinstating probation after the period of retained jurisdiction on December 5, 2013. The order provided that Shubert's probation expired on February 26, 2015.

### 6. 2014 probation violation and GT-601 case termination

New probation violation allegations were filed against Shubert on February 18, 2014, however, these allegations, were only filed in Shubert's GT-601 case. After admitting to probation violations, Shubert again appeared in front of Judge Owen for a disposition hearing on April 2, 2014. Shubert again appeared with Lojek as her attorney. At the hearing, Judge Owen stated that the "only reason you're not here on this other case [referring to NSF-2880] is that you only had three years of probation on that other case[.]" Judge Owen further stated:

> I am not going to reinstate you to probation. I don't think that's going to work. I am not going to send you to prison. I can't see any reason to do that, considering that you've already spent a year in jail for probation violations and various weighted sentences. I'm simply going to terminate your probation, and this case is going to end. You'll have to sort this out on your own . . . [n]ext time you'll be charged with a new felony offense, and I fear that this is going to start again.

Thereafter, Judge Owen entered an order revoking probation, imposing sentence, and commuting sentence to Ada County jail with credit for time served on April 4, 2014. This order effectively ended Shubert's GT-601 case.

At this point, it appears Shubert believed that her probation had ended in both GT-601 and NSF-2880. On April 8, 2014, Shubert called her probation officer, Christina Martindale, about the status of her probation. Martindale made note of the conversation, stating that Shubert called "to report that she was not on probation" as ordered by Judge Owen. Despite Shubert's conclusion that her probation had ended in both cases, it appears that Martindale thought that Shubert's probation for NSF-2880 was still active. On April 28, 2014, Martindale recorded the following in her probation officer notes:

5

Spoke with Inga (208) 287-7524 – Judge Owen's clerk to determine if [Shubert's] sentence was commuted on case CRMD2008-2880. The PV I submitted to the Court noted both cases as prior ROV that were submitted. A PV was filed for both cases on prior instances. The ROV I submitted was submitted [in] both cases and the court order for both cases were attached to the documents submitted to the Court. Only the one case was ordered before the court. Judge Owen commuted [Shubert's] sentence and [Shubert] [now] is [of] the opinion she is off probation. As Clerk Inga verified the court only filed the PV for one case and thus [Shubert] remains on probation for case 2880.

### 7. Shubert's move to Texas

Believing that her probation had been terminated in both cases, Shubert moved to Texas. In her declaration, Shubert maintains that she told Lojek prior to the April 2, 2014, disposition hearing—where Judge Owen terminated her probation in GT-601—that she wanted to move to Texas to live with her grandmother and help care for her niece. Further, Shubert asserts that Lojek never advised her that she was still on probation in NSF-2880, and never told her that she would be violating her probation if she moved to Texas. The record indicates that Lojek argued that Shubert should be allowed to relocate to Texas in the April 2, 2014, disposition hearing. Judge Owen asked Lojek whether Shubert's probation officer had agreed to let Shubert move to Texas, to which Lojek responded, "I don't know the answer to that." Judge Owen advised Lojek to approve the plan with Shubert's probation officer first, because Shubert's plan to move "is all for naught if her probation officer won't agree."

After Shubert moved to Texas, Martindale contacted her in June 2014 and informed her that she was in violation of the terms of her probation because she left the state of Idaho. Shubert maintains that she reiterated to Martindale that she believed that she was no longer on probation. Relying on Martindale's statements, Shubert returned to Idaho and contacted Lojek to clear up the probation issue. According to Shubert, she informed Lojek that she did not believe she was on probation. In response, Shubert asserts that Lojek told her that this was the result of a clerical mistake and that he would take care of it. In a deposition, Lojek stated that he did not recall Shubert telling him that she did not belong on probation, or that there had been a mistake in her probation files.

### 8. New Canyon County criminal charges against Shubert and resulting probation violations

After Shubert returned to Idaho, Canyon County filed a criminal complaint on July 14, 2014, charging Shubert with one count of aiding and abetting aggravated battery. The next day,

Canyon County issued a warrant for Shubert's arrest. Shubert was arrested in connection with the Canyon County case on July 15, 2014. When Shubert was charged and arrested in the Canyon County case, Ada County authorities still considered her probation to be active in NSF-2880. Thus, on July 24, 2014, Shubert was again charged with violating the terms of her probation in NSF-2880.

Shubert appeared in front of Judge Owen for an arraignment hearing on July 30, 2014, regarding the allegations of the July 2014 probation violations in NSF-2880. It appears that after Shubert was charged in connection with the Canyon County case, nobody noticed that Shubert should no longer be on probation at all. Multiple hearings were set and re-set while the Canyon County case progressed. Shubert was concurrently incarcerated from July 2014 through December 2014 for a probation violation in NSF-2880 and for the Canyon County charge. For the new probation violation allegations in NSF-2880, Shubert was incarcerated from July 24, 2014, to December 10, 2014. For the allegations in the Canyon County case, Shubert's incarceration was extended through December 24, 2014, when the charges against her were dismissed.

### 9. Shubert contacts Martindale and Lojek regarding probation in NSF-2880

In January 2015, Shubert reached out to both Martindale and Lojek regarding the status of her probation in NSF-2880. Shubert spoke to Martindale twice in early January regarding her probation. On January 5, 2015, Shubert told Martindale she was waiting for a court order from Ada County clarifying the fact that she was off probation because the court made a mistake terminating probation in only one of her cases. On January 7, 2015, Martindale followed up with Shubert and informed her that according to the court she was still on probation in NSF-2880 because no order of dismissal or commuted sentence had been received.

Shubert and Lojek also exchanged emails in January 2015. On January 19, 2015, Lojek advised Shubert that he was going to check with Martindale regarding the possibility of a "Special Progress Report" that he could file with a motion to terminate probation. Shubert responded that she had seen Martindale in person, and Martindale allegedly told her that there was likely a mix up after the April 2014 hearing in front on Judge Owen. Shubert also indicated that Martindale expressed interest in writing a letter on Shubert's behalf if Lojek contacted her. Lojek responded, thanking Shubert for following up with Martindale herself, stating that "it ought to really help[.]"

On January 29, 2015, Shubert sent Lojek another email informing him about a conversation she had with Martindale. Martindale told Shubert she had not been in touch with Lojek yet, and that Martindale believed someone "should be able to just contact the judge or central records" to correct the mistake. On February 1, 2015, Lojek responded, stating that he would draft a letter to Martindale for Shubert on the office letterhead and send it the next day. Shubert followed up with an email to Lojek on February 4, 2015, looking for an update. At that time, Lojek had not yet heard back from Martindale. On February 9, 2015, Shubert emailed Lojek again regarding word from Martindale. Lojek responded:

> Not exactly. [Martindale] is getting serious pressure to violate you. I have the feeling she doesn't want to but she did say she can't submit a progress report that will do us any good. If we file a Motion and get you back on Medema's [Ada County prosecutor] radar I bet he'll file the PV himself . . . .

Shubert responded: "I haven[']t done anything to get violated for ?? I[']m so confused[.]"

On June 11, 2015, Lojek received an email from Martindale regarding Shubert's probation. In that email, Martindale states that "Ms. Shubert does not meet [the Idaho Department of Corrections'] criteria to be eligible for an" early discharge. Lojek noted this email in Shubert's case file, writing: "Per PO – [Shubert] not eligible for early discharge. [A]dvised [Shubert]: Prob[ation] expires [September 2016]."

### 10. 2016 probation violation and discovery of the mistaken order

On March 11, 2016, Shubert was arrested for an alleged probation violation in connection with NSF-2880. At this time, Shubert received a new public defender, Jonathan Loschi. After reviewing Shubert's case file, Loschi discovered that Shubert should not have been on probation. In his deposition, Loschi stated that he discovered the error when he "first picked up the case." Further, Loschi stated that he did not need to speak with Shubert to reach the conclusion that her probation had ended in 2013 at the latest. On March 17, 2016, Loschi filed a motion with the Ada County District Court to correct Shubert's illegal sentence. Judge Owen granted the motion, and Shubert was released from custody on March 21, 2016.

In a subsequent hearing on March 23, 2016, Judge Owen apologized to Shubert for failing to enter an order terminating her probation in NSF-2880. Judge Owen explained that the first mistake occurred in 2011, when multiple orders reinstating and amending probation extended her probation end date. Judge Owen further explained that he never ordered her probation to be extended in either GT-601 or NSF-2880. Because of the initial error in 2011,

Judge Owen stated that Shubert should not have been prosecuted for NSF-2880 probation violations in 2013 and 2014. Additionally, Judge Owen explained that both GT-601 and NSF-2880 should have been terminated on April 4, 2014. However, only an order terminating probation for GT-601 was entered by the district court.

### B. Procedural Background.

On April 1, 2016, Shubert served notice of her tort claim on Ada County and filed a pro se complaint and demand for jury trial. She later retained counsel on May 25, 2016. After the district court dismissed several claims and defendants from Shubert's original complaint, the Ada County Defendants moved for summary judgment. In their motion for summary judgment, the Ada County Defendants argued that Shubert failed to sufficiently state a claim against Ada County and Trimming in her complaint, public defenders should be entitled to absolute immunity from suit under the common law, and two provisions of the ITCA—Idaho Code sections 6-904 and 6-904A—exempt Lojek and Trimming from liability. The district court denied the Ada County Defendants' motion for summary judgment. In denying, the district court held that public defenders are not entitled to absolute immunity under the common law in Idaho, and that the ITCA did not exempt Lojek from liability. Specifically, regarding the ITCA, the district court held that Lojek was not performing a discretionary function to receive immunity under Idaho Code section 6-904(1), and that the immunity offered under Idaho Code section 6-904A(2) did not apply to the facts of this case.

Thereafter, the Ada County Defendants filed a motion for permissive appeal pursuant to Idaho Appellate Rule 12. The district court granted the motion in part, and stayed the case pending a decision from this Court. This Court subsequently issued an order granting permissive appeal on four issues. After Shubert filed a notice of cross appeal and amended notice of cross appeal, this Court dismissed the cross appeal.

## II. STANDARD OF REVIEW

When this Court reviews a lower court's ruling on a summary judgment motion, this Court applies the same standard of review the lower court utilized in ruling on the motion. *Idaho First Bank v. Bridges*, 164 Idaho 178, 182, 426 P.3d 1278, 1282 (2018); *Hansen v. City of Pocatello*, 145 Idaho 700, 702, 184 P.3d 206, 208 (2008). Thus, summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Bridges*, 164 Idaho at 182, 426 P.3d at 1282. Any disputed facts and reasonable

9

inferences are construed in favor of the non-moving party, and the Court freely reviews the questions of law. *Id.* "This Court exercises free review over statutory interpretation because it presents a question of law." *State v. Amstad*, 164 Idaho 403, 405, 431 P.3d 238, 240 (2018).

## III.   ANALYSIS

### A. This Court's holding is limited to those issues raised in the Ada County Defendants' motion for permissive appeal.

This Court granted permissive appeal to address four issues: (1) whether public defenders are entitled to immunity under the common law; (2) whether public defenders are entitled to immunity pursuant to Idaho Code section 6-904; (3) whether the unambiguous language in Idaho Code section 6-904A exempts public defenders and Ada County from liability; and (4) whether a criminal defendant is presumed to have knowledge of the contents of a court document when she signs and certifies the document. The Ada County Defendants attack the district court's summary judgment rulings regarding common law immunity for public defenders, specific statutory exceptions to the ITCA. Further, Shubert challenges the effect of Shubert signing and certifying probation agreements throughout her probationary period. Shubert defends the district court's rulings in these areas, and also attacks the district court's ruling regarding whether public defenders are government employees under the ITCA. However, the issues presented on appeal do not include whether public defenders are government employees under the ITCA. When this Court considers a permissive appeal, it is constrained to rule narrowly and "address only the precise questions that were framed by the motion seeking permissive appeal and granted by the Court." *Hall v. State*, 155 Idaho 610, 615, 315 P.3d 798, 803 (2013). Claims not relevant to this permissive appeal will not be addressed. *See Pioneer Irrigation Dist. v. City of Caldwell*, 153 Idaho 593, 597, 288 P.3d 810, 814 (2012). As such, this Court will not address the district court's determination that public defenders Lojek and Trimming are government employees under the ITCA. *Id.*

### B. The district court did not err in declining to extend quasi-judicial immunity to public defenders.

The Ada County Defendants ask this Court to extend common law quasi-judicial immunity for legal malpractice claims to public defenders in Idaho. This is a matter of first impression.

Idaho grants absolute immunity to judges and prosecuting attorneys at common law. *See Nation v. State, Dep't of Corr.*, 144 Idaho 177, 187–88, 158 P.3d 953, 963–64 (2007) (holding

10

that prosecuting attorneys are entitled to absolute immunity for their quasi-judicial function); *Poff v. Scales*, 36 Idaho 762, 766, 213 P. 1019, 1019–20 (1923) ("It is unquestionable and has been from the earliest days of the common law that a judicial officer cannot be called to account in a civil action for his determination and acts in his judicial capacity[.]"). The grant of absolute immunity is based on public policy. *Nation*, 144 Idaho at 187, 158 P.3d at 936. Prosecuting attorneys, for instance, are afforded absolute immunity from civil suit in carrying out their official duties to combat fears of "unfounded litigation" that could cause a "deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.* (quoting *Imbler v. Pachtman*, 424 U.S. 409, 423–24 (1976)). Absolute immunity for prosecuting attorneys is recognized, however, only for activities intimately associated with the judicial phase of the criminal process. *Id.* at 188, 158 P.3d at 964. Thus, Idaho grants immunity to prosecuting attorneys from civil suit when they perform a "quasi-judicial" function. *Id.*

This Court has previously examined extending quasi-judicial immunity in the context of court-appointed social workers and attorneys acting as guardians ad litem. *See Colafranceschi v. Briley*, 159 Idaho 31, 35, 355 P.3d 1261, 1265 (2015); *McKay v. Owens*, 130 Idaho 148, 156, 937 P.2d 1222, 1230 (1997). When determining whether quasi-judicial immunity should be extended to an actor, this Court employs an "arm of the court" analysis adopted by the United States Supreme Court. *McKay*, 130 Idaho at 156, 937 P.2d at 1230. This analysis is "functional" in that it looks to "the nature of the function performed, not the identity of the actor who performed it." *Id.* (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (internal quotation marks omitted)).

In *McKay* and *Colafranceschi*, we determined that the actors in question were "acting as an arm of the court." *Colafranceschi*, 159 Idaho at 35, 355 P.3d at 1265. The actors were "performing a judicial function" as a "*neutral party gathering information for the court's use* in making a child custody / parenting time decision[.]" *Id.* (emphasis added). Additionally, this Court considered the "importance of the [court] appointee's exercise of independent judgment and the importance of avoiding the pressure that might be brought to bear by the 'intimidating wrath and litigious penchant of disgruntled parents.'" *Id.* (quoting *McKay*, 130 Idaho at 158, 937 P.2d at 1232). The threat of litigation creates a "chilling effect" on the willingness of attorneys and social workers to serve as guardians ad litem. *Id.* at 35–36, 1265–66.

11

Applying Idaho's "functional approach" employed in *McKay* and *Colafranceschi*, we look to the nature and function of the work performed by public defenders to determine if they are entitled to quasi-judicial immunity. *Colafranceschi*, 159 Idaho at 36, 355 P.3d at 1265. Public defenders represent indigent defendants in Idaho's criminal justice system. Idaho does not have a statewide public defense system; indigent defense is managed at the county level. *See* IDAHO POLICY INST., IDAHO PUBLIC DEFENSE WORKLOAD STUDY 2018 3 (2018). Of Idaho's forty-four counties, thirty-two of them contract with private counsel to provide indigent defense. *Id.* The remaining twelve counties have institutional offices where public defenders are county employees. *Id.* Public defenders are paid at the county level, but their relationship to clients is similar to other, private attorney-client relationships.

The Ada County Defendants assert that the role of public defenders in the criminal justice system is analogous to the roles of judges and prosecuting attorneys. We disagree.

From the outset it is important to recognize that the Idaho Constitution squarely places prosecuting attorneys within the judicial branch of government. *See* Idaho Const., art. V, § 18. Article V of Idaho's Constitution establishes and outlines Idaho's Judicial Department. *Id.* Within Article V, section 18 pertains to prosecuting attorneys' qualifications and their terms of office. *Id.* Conversely, public defenders are not mentioned anywhere in Article V. *See id.*

There is a reason that public defenders are not considered part of the judiciary. Public defenders may be government employees, but public defenders do not act on behalf of, or in concert with, the government in their practice. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 318–19 (1981). Rather, public defenders are duty-bound to represent the interests of their clients. *Id.* Unlike a guardian ad litem or a court-appointed social worker, public defenders are not "neutral parties gathering information for the court's use." *Colafranceschi*, 159 Idaho at 36, 355 P.3d at 1265. Instead public defenders advocate solely for their clients, adverse to the state. Given this Court's precedent in *McKay* and *Colafranceschi*, public defenders do not function as an arm of the court or the judiciary so as to justify extending them quasi-judicial immunity from legal malpractice liability.

Moreover, the responsibilities of prosecutors and public defenders are distinguished in the Idaho Rules of Professional Conduct. Prosecuting attorneys are bound by specific rules of professional conduct regarding charging decisions and the rights of the accused. For instance, I.R.P.C. 3.8 requires prosecuting attorneys to "refrain from prosecuting a charge that the

12

prosecutor knows is not supported by probable cause," and to "make reasonable efforts to assure that the accused has been advised of the right to, and the procedure for obtaining, counsel and has been given reasonable opportunity to obtain counsel[.]" *Id.* The requirements of I.R.P.C. 3.8 do not apply to public defenders, who—like all defenses attorneys— are tasked with zealous representation of their client's best interests. Thus, a prosecuting attorney's unique responsibility to act within the interest of justice under the rules of professional conduct provides an additional distinction between the roles of prosecuting attorneys and public defenders.

Finally, the Ada County Defendants argue that the threat of legal malpractice limits their ability to effectively advocate for their clients, and creates a "chilling effect" on their defense efforts. We disagree. While public defenders do not have the ability to decline representation like private counsel, they otherwise function exactly like private counsel in the criminal justice system. Because public defenders and private defense counsel have similar roles and obligations to clients, the argument that the threat of legal malpractice litigation presents a "chilling effect" is unpersuasive. Public defenders face the same threat of retaliatory legal malpractice claims as private defense counsel. *See Lamb v. Manweiler*, 129 Idaho 269, 272, 923 P.2d 976, 979 (1996). The prospect of legal malpractice litigation does not create a "chilling effect" on the efforts of private defense counsel. Instead, potential liability promotes professional responsibility. Accordingly, we hold that public defenders are not entitled to quasi-judicial immunity from legal malpractice claims.

### C. The district court did not err in finding that public defenders are not entitled to immunity under Idaho Code section 6-904(1).

The Ada County Defendants assert that the ITCA's discretionary function exception under Idaho Code section 6-904(1) immunizes Lojek, Trimming, and Ada County from liability. The district court disagreed, holding that Idaho Code section 6-904(1) does not apply to the type of conduct alleged in Shubert's complaint. Specifically, the district court held that the conduct Shubert challenges in this case—Lojek's review of judgments and orders—is operational rather than discretionary. We agree with the district court's determination.

The ITCA provides that a governmental entity is liable for "money damages arising out of the negligent or otherwise wrongful acts or omissions of its employees acting within the course and scope of their employment or duties" if a private person would be liable for such acts under state law. I.C. § 6-903(1); *James v. City of Boise*, 160 Idaho 466, 481, 376 P.3d 33, 48 (2016). The ITCA provides several exceptions and limitations to governmental liability,

13

including those laid out in Idaho Code section 6-904. *See* I.C. §§ 6-904(1)–(7). Idaho Code section 6-904(1) is known as the "discretionary function" exception. I.C. § 6-904(1). The statute provides:

> A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which:
>
> 1. Arises out of any act or omission of an employee of the governmental entity exercising ordinary care, in reliance upon or the execution or performance of a statutory or regulatory function, whether or not the statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.

I.C. § 6-904(1). The discretionary function exception applies to government decisions entailing planning or policy formation, and "does not include functions which involve *any* element of choice, judgment, or ability to make responsible decisions," otherwise every government action would fall under the exception. *Czaplicki v. Gooding Joint Sch. Dist. No. 231*, 116 Idaho 326, 331, 775 P.2d 640, 645 (1989) (emphasis in original).

This Court employs a two-step analysis in determining if the government is entitled to immunity under the discretionary function exception:

> The first step is to examine the nature and quality of the challenged actions. Routine, everyday matters not requiring evaluations of broad policy factors will more likely than not be operational. Decisions involving a consideration of the financial, political, economic and social effects of a policy or plan will generally be planning and discretionary. While greater rank or authority will most likely coincide with greater responsibility for planning or policy decisions; . . . those with the least authority may, on occasion, make planning decisions which fall within the ambit of the discretionary function exception. The second step is to examine the underlying policies of the discretionary function, which are: to permit those who govern to do so without being unduly inhibited by the threat of liability for tortious conduct, and also, to limit judicial re-examination of basic policy decisions properly entrusted to other branches of government.

*Dorea Enters., Inc. v. City of Blackfoot*, 144 Idaho 422, 425, 163 P.3d 211, 214 (2007) (internal citations and quotation marks omitted).

The two-step analysis set forth in *Dorea*, requires us to begin our analysis with an examination of the nature and quality of the conduct Shubert challenges. 144 Idaho at 425, 163 P.3d at 211. In Shubert's complaint, she alleges that Lojek and the Ada County Public Defender's Office failed to exercise ordinary care in their representation of her by failing to spot

14

and correct erroneous orders that illegally extended her probation. Under the *Dorea* standard, discretionary decisions involve the consideration of financial, political, economic, and social effects of a policy or plan. 144 Idaho at 425, 163 P.3d at 211. Based on this standard, Lojek's conduct is not discretionary.

Lojek's representation of Shubert involved "routine, everyday matters" for public defenders. *Id.* Nowhere in his deposition did Lojek suggest that his approach to reviewing Shubert's case and her status on probation reflected the financial, political, economic or social effects of an Ada County policy or plan. Instead, Lojek referred to his general practice and approach to alleged probation violations. Lojek's "general" practice in reviewing an alleged probation violation was to look at the documents he was handed in court and look at the allegations that were levied against his client. Using that information, Lojek would then "endeavor to get the probation violation dismissed." Lojek could not say whether the process he used was the same standard used throughout Ada County. In fact, Loschi asserted in his deposition that the Ada County Public Defender's Office has no "established policy" regarding how an attorney is to review an order imposing sentence or amending probation. Because Lojek's conduct did not reflect any policy or plan of the Ada County Public Defender's Office, his handling of Shubert's cases certainly could not have considered the financial, political, economic, and social effects of a policy or plan. Accordingly, Lojek's conduct does not constitute a discretionary function and the Ada County Defendants fail step one of the *Dorea* two-step analysis. Therefore, the district court did not err in holding that Lojek's challenged conduct does not fall within the ITCA's discretionary function exception.

The Ada County Defendants also appear to argue that the actions of public defenders are discretionary in nature, making all public defender conduct in connection with legal representation discretionary. The Ada County Defendants assert that because this Court's decision in *Sterling v. Bloom* supports the proposition that judicial decision making must be considered discretionary, the acts of public defenders must also be discretionary. We disagree.

Ada County first argues that *Sterling v. Bloom*, 111 Idaho 211, 231, 723 P.2d 755, 775 (1986) (overruled on other grounds), supports the proposition that judges are immune from liability under Idaho Code section 6-904(1) because they "exercise a discretionary function on the bench." The *Sterling* Court also stated that "[t]he decisionmaking of judges must fall within the discretionary function exception in order to afford the insulation necessary for judges to

15

independently carry out their tasks without fear of consequence." *Id.* The Ada County Defendants' reliance on *Sterling* is misplaced. First, this language from *Sterling* is dicta. The Court raised judicial conduct in relation to the ITCA to point out weakness in the "planning/operational" test used to determine if the discretionary function exception applies rather than actually relying on the discretionary function exception to grant immunity to judges. *Id.* Second, in arguing the dicta from *Sterling*, the Ada County Defendants essentially seek a back door to quasi-judicial immunity for public defenders. The *Sterling* Court erred in equating two separate and distinct immunities: a judge's quasi-judicial immunity and the ITCA's discretionary function immunity. To the extent *Sterling* can be read to suggest that judges perform a discretionary function without first conducting the *Dorea* two-step analysis, it is overruled. As stated above, public defenders are not extended the same quasi-judicial immunity as judges. Thus, any discretionary function immunity for public defenders' work product must flow from this Court's well established *Dorea* two-step analysis under the ITCA on a case-by-case basis. We reject the Ada County Defendants' argument that public defenders' actions are always discretionary.

As a final note on this issue, we address whether the discretionary function exception immunizes Trimming from liability. At best, Shubert alleges Trimming is vicariously liable as Lojek's supervisor at the Ada County Public Defender's Office. Regardless, Trimming is not entitled to immunity under the discretionary function exception. Like Lojek, Trimming's alleged conduct does not reflect any policy or plan of the Ada Public Defender's Office. Therefore, we hold that Trimming is not entitled to immunity under Idaho Code Section 6-904(1).

**D. The district court did not err in finding that public defenders and Ada County are not entitled to immunity under Idaho Code section 6-904A.**

Alternatively, the Ada County Defendants assert that another provision of the ITCA provides immunity for Ada County and public defenders Trimming and Lojek. The Ada County Defendants argue that the plain language of Idaho Code section 6-904A(2) exempts the government from injuries "by or to a person who is on probation." Thus, the Ada County Defendants argue that because Shubert was on probation when she was injured, or injured by illegal detention, this statutory language exempts them from liability. The district court disagreed, finding that section 6-904A(2) "immunity does not clearly apply to [the] facts and circumstances in this case, i.e. where the injury is to a person who was illegally on probation which was caused by the alleged negligence of her public defender."

16

Idaho Code section 6-904A provides another avenue for statutory tort immunity under the ITCA. The statute provides:

> A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent and without reckless, willful and wanton conduct as defined in section 6-904C, Idaho Code, shall not be liable for any claim which:
>
> . . .
>
> 2. Arises out of injury to a person or property by a person under supervision, custody or care of a government entity or by or to a person who is on probation, or parole, or who is being supervised as part of a court imposed drug court program, or any work-release program, or by or to a person receiving services from a mental health center, hospital or similar facility.

I.C. § 6-904A(2). The statute grants immunity under two distinct scenarios. The first clause immunizes governmental entities for claims arising out of injury "to a person or property by a person under the supervision, custody or care" of a governmental entity. I.C. § 6-904A(2). The second clause immunizes governmental entities for claims arising out of injury "*by or to* a person who is on probation." *Id.* (emphasis added).

This Court's precedent interpreting Idaho Code section 6-904A(2) is limited to the first clause. These cases all concern third-party injury claims where the person causing the harm was under the supervision, custody, or care of the government, or the person causing the harm was on probation. *See Marcei v. Coeur d'Alene Sch. Dist. No. 271*, 150 Idaho 740, 743, 250 P.3d 791, 794 (2011) (analyzing immunity for a school district in a claim raised by parents of a student injured by another student); *Sherer v. Pocatello Sch. Dist. No. 25*, 143 Idaho 486, 493, 148 P.3d 1232, 1239 (2006) (analyzing immunity for a school district in a claim raised by parents of a student injured at a school-sponsored carnival); *Hei v. Holzer*, 139 Idaho 81, 87, 73 P.3d 94, 100 (2003) (analyzing immunity for a school district in a claim raised by a student engaged in a sexual relationship with a teacher); *Smith v. Bd. of Corr.*, 133 Idaho 519, 522–23, 988 P.2d 1193, 1196–97 (1999) (analyzing immunity for the state board of corrections in a claim raised by inmates against the supervisors of a prison wood shop); *Coonse ex rel. Coonse v. Boise Sch. Dist.*, 132 Idaho 803, 806, 979 P.2d 1161, 1164 (1999) (analyzing immunity for a school district in a claim raised by parents of a student assaulted by other students at school). These cases highlight that Idaho Code section 6-904A(2) provides the government immunity from the "unpredictable acts of third persons who are under the state's custody, supervision and care." *Smith*, 133 Idaho at 523, 988 P.2d at 1197 (quoting *Harris v. State, Dep't of Health & Welfare*,

17

123 Idaho 295, 299, 847 P.2d 1156, 1160 (1992)). Alternatively, this Court has never analyzed the language of Idaho Code section 6-904A(2) implicated here: where the claim against the government is by an individual on, or illegally on, probation.

This Court granted permissive appeal to determine whether Idaho Code section 6-904A grants immunity to both public defenders and Ada County as a governmental entity. Therefore, we separately analyze whether the public defender defendants and Ada County are entitled to immunity under Idaho Code section 6-904A(2).

Here, the public defender defendants are not immune from liability under Idaho Code section 6-904A(2). Idaho Code section 6-904A(2) immunizes a governmental entity and its employees for any claim arising out of injuries sustained by a probationer. A simple example of this would be negligent supervision of a probationer injured while on work detail along a busy road. Nothing in the act, however, immunizes a governmental entity against a claim for injuries sustained as a result of being held on probation illegally. Shubert was not legally "on probation" when her claim arose. It is undisputed that Shubert should not have been on probation after April 2014. When Shubert was incarcerated based on an erroneous probation order later that year, she was not legally on probation in either NSF-2880 or GT-601. Thus, she was not "on probation" as required by the plain language of the statute.

The Ada County Defendants argue that despite the error, Shubert was "on probation" for the purposes of section 6-904A(2) because she was on probation in the district court's records, and had no ability to disobey the court order even if she believed it was incorrect. We disagree. Even if Shubert had no ability to disobey the court order, that does not change the fact that she was not lawfully on probation when her claim arose. Additionally, the Ada County Defendants' position essentially argues that they are entitled to immunity under Idaho Code section 6-904A(2) because they failed to catch the mistakes that kept Shubert on probation illegally. But for their own errors, the Ada County Defendants would not be able to assert immunity under section 6-904A(2). We will not allow the Ada County Defendants' errors to justify otherwise inapplicable immunity. Accordingly, the district court did not err in finding that Idaho Code section 6-904A(2) does not apply to grant immunity to public defenders Lojek and Trimming in this case.

The same result applies to defendant Ada County. We have already determined that section 6-904A(2) does not apply because Shubert was not legally on probation for the purposes

of the statute. As such, Ada County is also not entitled to immunity under the statute.

### E. Represented criminal defendants are not presumed to recognize legal error in court documents they have signed and certified.

The final issue we consider is whether the district court erred in finding that Shubert's court certifications could not be used as evidence demonstrating her "knowledge and understanding of the contents of the signed records." The Ada County Defendants identify four documents in the record that Shubert signed and certified regarding probation for her NSF-2880 case. These four documents are: (1) Shubert's "Guilty Plea Advisory" form containing Shubert's handwritten notes of her maximum possible sentence on November 7, 2008, and certifying that she understood all the "questions and answers" on the form; (2) Shubert's March 26, 2009, "Judgment of Conviction, Suspended Sentence, Order of Probation and Commitment" containing her initial probation end date of February, 26, 2012; (3) Shubert's June 13, 2011, "Order Reinstating and Amending Probation" following a probation violation that erroneously extended her probation end date to May 19, 2017; and (4) Shubert's September 17, 2013, "Order Reinstating Probation After Retained Jurisdiction" that erroneously set her probation end date to September 10, 2016. Thus, in signing and certifying court documents detailing her maximum probation sentence and subsequent changes to that probation sentence, the Ada County Defendants argue that the law presumes Shubert's knowledge of the documents' contents. The district court disagreed, finding that Shubert did inquire about the status of her probation, but ultimately, the district court and her attorney failed to correct multiple erroneous orders.

As a preliminary matter, the framing of this issue is critical to our analysis. The issue is not, as the Ada County Defendants assert, whether a criminal defendant is presumed to have read and understood a document they signed. As we explain below, that presumption is valid. Instead, the issue is whether a represented criminal defendant is presumed to recognize a *legal error* missed by her attorney in her court documents.

First, criminal defendants are presumed to have read and understood the court documents they sign. This Court has analogized plea agreements and provisions of probation agreements to contracts and analyzed them through the lens of contract law. *See State v. Jaskowski*, 163 Idaho 257, 261, 409 P.3d 837, 841 (2018) (analyzing probation agreement terms through the lens of contract law); *State v. Gomez*, 153 Idaho 256–57, 281 P.3d 90, 93–94 (2012) (analyzing plea agreements through the lens of contract law). "It was no accident that our decision in *Gawron* recognized the analogy between probation agreements and traditional contractual terms in

19

government contracts." *Jaskowski*, 163 Idaho at 261, 409 P.3d at 841 (citing *State v. Gawron*, 112 Idaho 841, 843, 736 P.2d 1295, 1297 (1987)). The court will give force and effect to the words of the contract, and "the law presumes that the parties understood the import of their contract and that they had the intention which its terms manifest." *Id.* Further, "a person who has executed a contract is presumed capable of understanding the nature and effect of such contract." *Liebelt v. Liebelt*, 118 Idaho 845, 848, 801 P.2d 52, 56 (1990). To be clear, criminal defendants are presumed to have read and understood the court documents they sign.

Represented criminal defendants are not, however, presumed to have recognized legal errors in their court documents. The Ada County Defendants assert that the four documents that Shubert signed demonstrate that Shubert knew she should not have been on probation. Taking the Ada County Defendants' argument on its face, they assert that Shubert should have known that her probation was set to expire in 2012 and that any court order extending that date was error. This premise is flawed.

Essentially, the Ada County Defendants argue that Shubert should have known Idaho law regarding probation and criminal sentencing. We disagree. Shubert's *attorney* was responsible for knowing and understanding Idaho's law concerning criminal sentencing and probation. Further, we do not expect criminal defendants to identify errors in their court documents that are overlooked by judges, law clerks, prosecutors, and their own attorneys. The Ada County Defendants' position places a higher duty on a criminal defendant than on her own lawyer, the prosecutor, and the district court. Such a result is inappropriate in this case. Therefore, we hold that a represented criminal defendant is not presumed to have knowledge of legal error in court documents signed and certified by the defendant.

## IV. CONCLUSION

We affirm the district court's denial of the Ada County Defendants' motion for summary judgment on the grounds that public defenders are not immune from legal malpractice at common law, or under Idaho Code sections 6-904(1) and 6-904A. Additionally, we hold that represented criminal defendants are not presumed to recognize legal error in court documents they have signed and certified. We award costs on appeal to Shubert as the prevailing party. This matter is remanded to the district court for proceedings consistent with this opinion.

Chief Justice BURDICK, and Justices BEVAN, STEGNER, and MOELLER CONCUR.

20